SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Ron E. Meisler
Christopher M. Dressel (admitted *pro hac vice*)
Bryan V. Uelk
Jennifer Madden (admitted *pro hac vice*)
320 S. Canal Street
Chicago, Illinois 60606
Telephone: (312) 407-0700
Fax: (312) 407-0411

– and –

SKADDEN, ARPS, SLATE, MEAGHER & FLOM (UK) LLP
Peter K. Newman
Nicole Stephansen
22 Bishopsgate
London EC2N 4BQ
Telephone: +44 20 7519 7000
Fax: +44 20 7519 7070

*Counsel to the Foreign Representative*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| *In re* | **Chapter 15** |
| **NFE Global Holdings Limited, *et al.*,** | **Case No. 26-11268 (MG)** |
| **Debtors in a Foreign Proceeding.[1]** | **(Jointly Administered)** |

---

[1]    The Debtors and the last four digits of their respective foreign identification numbers are NFE Global Holdings Limited (9588) and NFE Brazil Newco Limited (1053).  The address of NFE Global Holdings Limited's registered office is Suite 1, 7th Floor, 50 Broadway, London SW1H 0BL, United Kingdom, and the address of NFE Brazil Newco Limited's registered office is Suite 1, 7th Floor, 50 Broadway, London SW1H 0DB, United Kingdom.

## NOTICE OF ENTRY OF ORDER SANCTIONING
## RESTRUCTURING PLANS IN FOREIGN MAIN PROCEEDINGS

**PLEASE TAKE NOTICE** that on May 28, 2026, Christopher Boas, in his capacity as the authorized foreign representative (the "**Foreign Representative**") of the above-captioned foreign debtors (the "**Debtors**") that are the subject of proceedings (the "**English Proceedings**") currently pending before the High Court of Justice of England and Wales (the "**English Court**") concerning two restructuring plans proposed pursuant to Part 26A of the Companies Act of 2006 (as amended), filed voluntary petitions (the "**Chapter 15 Petitions**") for relief under chapter 15 of title 11 of the United States Code (the "**Bankruptcy Code**") for the Debtors with the United States Bankruptcy Court for the Southern District of New York (the "**Court**") and the *Verified Petition for (I) Recognition of Foreign Main Proceeding, (II) Recognition of Foreign Representative, and (III) Related Relief Under Chapter 15 of the Bankruptcy Code* [Docket No. 3] (the "**Verified Petition**" and together with the Chapter 15 Petitions the "**Petitions**").[2]

**PLEASE TAKE FURTHER NOTICE** that, among other things, the Verified Petition requests entry of an order recognizing the English Proceedings as foreign main proceedings pursuant to Bankruptcy Code section 1517, recognizing the Foreign Representative as a "foreign representative" as defined in Bankruptcy Code section 101(24), and granting related relief pursuant to sections 105(a), 1507, 1510, 1515, and 1521 of the Bankruptcy Code.

**PLEASE TAKE FURTHER NOTICE** that the hearing before the English Court to consider whether to sanction the Restructuring Plans occurred on June 18, 2026 (the "**Sanction Hearing**").

**PLEASE TAKE FURTHER NOTICE** that following the Sanction Hearing, which was uncontested, the English Court entered an order sanctioning the Restructuring Plans (the "**Sanction Order**").

**PLEASE TAKE FURTHER NOTICE** that the Foreign Representative hereby supplements the Petitions by filing a certified copy of the Sanction Order, attached hereto as **Exhibit A**.

*[Remainder of Page Intentionally Left Blank]*

---

[2]   Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Verified Petition.

Dated: June 18, 2026
      Chicago, Illinois

           SKADDEN, ARPS, SLATE, MEAGHER
             & FLOM LLP

           /s/ *Ron E. Meisler*
           Ron E. Meisler
           Christopher M. Dressel (admitted *pro hac vice*)
           Bryan V. Uelk
           Jennifer Madden (admitted *pro hac vice*)
           320 S. Canal Street
           Chicago, Illinois 60606
           Telephone: (312) 407-0700
           Fax: (312) 407-0411

           – and –

           SKADDEN, ARPS, SLATE, MEAGHER
             & FLOM (UK) LLP

           Peter K. Newman
           Nicole Stephansen
           22 Bishopsgate
           London EC2N 4BQ
           Telephone: +44 20 7519 7000
           Fax: +44 20 7519 7070

           *Counsel to the Foreign Representative*

# EXHIBIT A

## Sanction Order

Claim No. CR-2026-002385

Claim No. CR-2026-002886

CR-2026-002385

**IN THE HIGH COURT OF JUSTICE**
**BUSINESS AND PROPERTY COURTS OF ENGLAND AND WALES**
**INSOLVENCY AND COMPANIES LIST (ChD)**

**Before: Mr Justice Cawson**

**Thursday, 18 June 2026**

**IN THE MATTER OF (1) NFE GLOBAL HOLDINGS LIMITED**

**AND**

**IN THE MATTER OF (2) NFE BRAZIL NEWCO LIMITED**

**AND**

**IN THE MATTER OF THE COMPANIES ACT 2006**

———————————————————

**ORDER**

———————————————————

**UPON THE APPLICATIONS** made by NFE Global Holdings Limited (the "**CoreCo Plan Company**") and NFE Brazil Newco Limited (the "**BrazilCo Plan Company**", together the "**Plan Companies**") by Part 8 claim forms dated 24 March 2026 and 10 April 2026 (the "**Claim Forms**")

**AND UPON** the order of Mr Justice Hildyard dated 14 May 2025 permitting the Plan Companies to convene seven meetings to consider and vote on the Plans, being (A) in respect of the CoreCo Plan, meetings of: (i) the R-1 Lenders, (ii) the R-2 Lenders, (iii) the TLA Lenders, (iv) the TLB Lenders, (v) the Series I Lender and the Series II Lender, and (vi) the Legacy Noteholders, and (B) in respect of the BrazilCo Plan, a meeting of the 2029 New Noteholders

**AND UPON READING** the Claim Forms, the Restructuring Plans, the witness statements of (i) Christopher Guinta, dated 30 April 2026 and 16 June 2026; (ii) David Hilty, dated 30 April 2026 and 11 May 2026; (iii) Alessandro Zorza, dated 30 April 2026 and 16 June 2026; and (iv) Nicole Stephansen, dated 8 May 2026, and the expert reports of (i) Daniel M. Glosband, dated 30 April 2026; (ii) Alejandro Sainz O., dated 30 April 3036, (iii) Richard Fleming, dated 8 May 2026, and (iv) Richard Bibby, dated 1 May 2026 and 8 May 2026

1

**AND UPON HEARING** Daniel Bayfield KC leading Ryan Perkins and Jon Colclough for the Plan Companies

**AND UPON** the Court (i) noting that the Plan Companies intend to rely on the exemption in section 3(a)(10) of the United States Securities Act 1933; and (ii) noting that the Plan Companies intend to rely on the Court's sanction of the Plans as an approval of the Plans and transactions contemplated by the Plans, including the issue of securities to the Plan Creditors, following a hearing on the fairness of the terms of the Plans at which hearing all Plan Creditors are entitled to attend in person or through counsel to support or oppose the sanctioning of the Plans; and (iii) confirming that the Court was notified of the matters in this Recital

**IT IS ORDERED THAT:**

1.      The Court hereby sanctions the Restructuring Plans in the form scheduled hereto.

2.      The Plan Companies or their solicitors shall each deliver, as soon as reasonably practicable, an office Copy of this Order to the Registrar of Companies.

**Service of the Order**

The Court has provided one sealed copy of this Order to the serving party:

Skadden, Arps, Slate, Meagher & Flom (UK) LLP, 22 Bishopsgate, London EC2N 4BQ

**DATED** 18 June 2026

3

**SCHEDULE**

**IN THE HIGH COURT OF JUSTICE**
**BUSINESS AND PROPERTY COURTS OF**
**ENGLAND AND WALES**
**INSOLVENCY AND COMPANIES LIST (ChD)**

**IN THE MATTER OF NFE GLOBAL HOLDINGS LIMITED**

**-and-**

**IN THE MATTER OF THE COMPANIES ACT 2006**

_____

**RESTRUCTURING PLAN**
(under Part 26A of the Companies Act 2006)

- between –

NFE GLOBAL HOLDINGS LIMITED

- and –

THE CORECO PLAN CREDITORS
(as defined herein)

_____

**Table of Contents**

1    Definitions and Interpretation.......................................................................................2

2    Application and Effectiveness of the Restructuring Plan.................................................15

3    Grant of Authority to Execute the Implementation Documents.......................................16

4    Deeds of Undertaking...................................................................................................20

5    Closing Steps and Plan Consideration...........................................................................21

6    Modifications of this Restructuring Plan........................................................................23

7    Releases......................................................................................................................24

8    Termination.................................................................................................................25

9    General Restructuring Plan Provisions...........................................................................26

10   Notice.........................................................................................................................28

11   Plan Parties.................................................................................................................31

12   Governing Law and Jurisdiction....................................................................................31

Schedule 1 – Undertaking Parties.........................................................................................32

i

## RESTRUCTURING PLAN

**Between:**

(1) NFE GLOBAL HOLDINGS LIMITED, a company incorporated under the laws of England and Wales (company number 13679588) (the "**Plan Company**"); and

(2) THE CORECO PLAN CREDITORS (as hereinafter defined).

**Recitals**

(A)    The Plan Company was incorporated and registered in England and Wales on 14 October 2021, with registered number 13679588, as a private company limited by shares under the Act (as defined below). The Plan Company's registered office is at Suite 1, 7th Floor, 50 Broadway, London, United Kingdom, SW1H 0BL. The Plan Company is an indirect subsidiary of NFE Inc. (as defined below).

(B)    The purpose of this Restructuring Plan (as defined below) is to effect a compromise and arrangement between the Plan Company and the CoreCo Plan Creditors (as defined below) to facilitate the implementation of the Restructuring (as defined below). The CoreCo Plan Creditors are the Legacy Noteholders, the RCF Lenders, the TLA Lenders, the TLB Lenders, the Series I Lender and the Series II Lender (each as defined below).

(C)    To effect such compromise and arrangement, each CoreCo Plan Creditor will pursuant to the terms of this Restructuring Plan, grant a power of attorney to the Plan Company to execute the Transaction Implementation Deed and the applicable Implementation Documents to which such CoreCo Plan Creditor is a party on its behalf (each as defined below).

(D)    In order to successfully implement the Restructuring, participation is required from, among others, the Undertaking Parties. Each of the Undertaking Parties has severally agreed, upon the sanctioning of this Restructuring Plan by the Court (as defined below), to be bound by and comply with the obligations expressed to apply to it under this Restructuring Plan and, on and from their release in accordance with the Restructuring Plan, the Implementation Documents to which it is a party pursuant to the provisions of such person's Deed of Undertaking (as defined below).

(E)    This Restructuring Plan and the BrazilCo Plan (as defined below) are inter-conditional such that this Restructuring Plan and the BrazilCo Plan shall become effective and legally binding at the same time (or not at all).

1

# 1    DEFINITIONS AND INTERPRETATION

## 1.1    Definitions

**1.1.1**    In this Restructuring Plan, the following terms shall, unless the context otherwise requires, have the following meanings:

"**2026 Legacy Noteholders**" means the ultimate beneficial holders of the 2026 Legacy Notes Debt;

"**2026 Legacy Notes**" means the 6.500% senior secured notes due 2026 issued by NFE Inc. pursuant to the 2026 Legacy Notes Indenture;

"**2026 Legacy Notes Debt**" means all present and future moneys, debts and liabilities due, owing or incurred from time to time by any member of the Group to the 2026 Legacy Noteholders under or in connection with the 2026 Legacy Notes (in each case, whether alone or jointly, or jointly and severally, with any other person, whether actually or contingently, and whether as principal, surety or otherwise);

"**2026 Legacy Notes Indenture**" means the indenture entered into by, among others, NFE Inc. as issuer and U.S. Bank Trust Company, National Association, as trustee and collateral agent, on 12 April 2021 (as amended, supplemented or otherwise modified from time to time);

"**2029 Legacy Noteholders**" means the ultimate beneficial holders of the 2029 Legacy Notes Debt;

"**2029 Legacy Notes**" means the 8.750% senior secured notes due 2029 issued by NFE Inc. pursuant to the 2029 Legacy Notes Indenture;

"**2029 Legacy Notes Debt**" means all present and future moneys, debts and liabilities due, owing or incurred from time to time by any member of the Group to the 2029 Legacy Noteholders under or in connection with the 2029 Legacy Notes (in each case, whether alone or jointly, or jointly and severally, with any other person, whether actually or contingently, and whether as principal, surety or otherwise);

"**2029 Legacy Notes Indenture**" means the indenture entered into by, among others, NFE Inc. as issuer and U.S. Bank Trust Company, National Association, as trustee and collateral agent, on 8 March 2024 (as amended, supplemented or otherwise modified from time to time);

"**2029 New Noteholders**" means the ultimate beneficial holders of the 2029 New Notes Debt;

"**2029 New Notes**" means the 12.000% senior secured notes due 2029 issued by NFE Financing pursuant to the 2029 New Notes Indenture;

"**2029 New Notes Debt**" means all present and future moneys, debts and liabilities due, owing or incurred from time to time by any member of the Group to the holders of the 2029 New Notes under or in connection with the 2029 New Notes (in each

2

case, whether alone or jointly, or jointly and severally, with any other person, whether actually or contingently, and whether as principal, surety or otherwise);

"**2029 New Notes Indenture**" means the indenture entered into by, among others, NFE Financing, as issuer and Wilmington Savings Fund Society, FSB, as trustee and collateral agent, on 22 November 2024 (as amended, supplemented or otherwise modified from time to time);

"**2029 New Notes Trustee**" means Wilmington Savings Fund Society, FSB in its capacity as trustee and the collateral agent in respect of the 2029 New Notes;

"**2029 New Notes Trustee Advisors**" means Winston & Strawn LLP, and Taylor Wessing LLP, in each case as counsel to the 2029 New Notes Trustee;

"**Act**" means the Companies Act 2006 (as amended from time to time);

"**Ad Hoc Groups**" means, collectively, the Akin/Evercore AHG, the PW/PWP AHG and the Legacy Notes AHG;

"**Administrative Party**" has the meaning given to it in the Transaction Implementation Deed;

"**Advisor Released Person**" means each of the current and former respective officers, directors, employees, executives, attorneys and agents (or equivalents) of each Released Advisor and each Affiliate of each Released Advisor;

"**Advisors**" means, collectively, the Akin/Evercore AHG Advisors, the PW/PWP AHG Advisors, the RCF Advisors, the TLA Advisors, the TLB Advisors, the Legacy Notes Advisors, the Legacy Notes Trustee Advisors, 2029 New Notes Trustee Advisors, the RCF Agent, the TLB Agent, the TLA Agent, the New CoreCo Term Loan Facility Agent, the FLNG 2 Term Loan Agent, the Legacy Notes Trustee, the 2029 New Notes Trustee, and any additional advisors or consultants engaged by any of the Ad Hoc Groups and (in each case) any successor professional advisors to each of the foregoing, in each case as advisors in connection with the Restructuring;

"**Affiliate**" means, with respect to a person, any other person who, directly or indirectly, is in control of, or controlled by, or is under common control with, such person and, for the purposes of this definition, "control" shall mean the power, direct or indirect, to (a) vote on more than 50 per cent. of the securities having ordinary voting power for the election of directors of such person, or (b) direct or cause the direction of the management and policies of such person whether by contract or otherwise;

"**Agreed Form**" means:

(a)     in respect of documents appended to the Explanatory Statement, the form so appended to the Explanatory Statement or as otherwise amended pursuant to (and in accordance with) this Restructuring Plan or the Transaction Implementation Deed;

(b)     in respect of any other Implementation Document, in the form agreed between the Plan Company and the Majority Plan Creditors; or

3

(c)     in respect of any document which is not an Implementation Document or otherwise appended to the Explanatory Statement but which is required herein or in the Transaction Implementation Deed to be in the Agreed Form, in the form agreed between the Plan Companies and the Majority Plan Creditors,

provided that, notwithstanding any provision of this definition of Agreed Form, any documents that are to be agreed between a Company Party and one or more Ad Hoc Groups or other creditor groups pursuant to the Restructuring Support Agreement shall be deemed to be in "Agreed Form" if such documents are in form and substance acceptable to such specified parties only, and, to the extent any Administrative Party is party to a document as administrative agent, in form and substance satisfactory to such Administrative Party;

"**Akin/Evercore AHG**" means the ad hoc group of certain unaffiliated holders of Term Loan B Debt represented by the Akin/Evercore AHG Advisors;

"**Akin/Evercore AHG Advisors**" means, collectively, Akin Gump Strauss Hauer & Feld LLP and Evercore Group L.L.C., and their Affiliates as counsel and financial advisor, respectively, to the Akin/Evercore AHG, as well as other regulatory, local, foreign, barristers and special counsel (in each case as notified to the Plan Company), in their respective capacities as counsel to the Akin/Evercore AHG;

"**Brazil Parent**" means NFE Brazil Investments LLC;

"**BrazilCo Plan**" means the restructuring plan proposed by NFE Brazil Newco in substantially the form attached to the Explanatory Statement (or appended to any supplemental explanatory statements made available to the CoreCo Plan Creditors prior to the Plan Meetings) or with, or subject to, any modification, addition or condition which the Court may think fit to approve or impose, as appropriate;

"**BrazilCo Plan Creditors**" means the 2029 New Noteholders;

"**Business Day**" means a day other than a Saturday, Sunday, or other day on which commercial banks are authorised to close under the laws of, or are in fact closed in, the State of New York, United States of America or in London, United Kingdom;

"**Closing Steps**" has the meaning given to it in Clause 5.1.2;

"**Company Party**" has the meaning given to it in the Transaction Implementation Deed;

"**Confirmation Deed**" means, in respect of a CoreCo Plan Creditor that has appointed one or more Nominees, a confirmation deed completed by such Nominee(s) and submitted to the Information Agent, in the form appended to the Plan Creditor Letter;

"**CoreCo Plan Claims**" means any (direct or indirect) claim of a CoreCo Plan Creditor in respect of any Liability of the Plan Company or any other Group Company, whether as principal obligor, guarantor, indemnifier or security provider, in relation to, or arising out of or in connection with, the Debt Documents or the CoreCo Plan Debt, arising on or before the Restructuring Effective Date, but

4

excluding any claim of a CoreCo Plan Creditor in respect of any Liability of the Plan Company or any other Group Company to any CoreCo Plan Creditor arising directly or indirectly in relation to, or arising out of or in connection with, a failure to comply with the terms of this Restructuring Plan, the Transaction Implementation Deed or any other Implementation Document;

"**CoreCo Plan Creditors**" means each of the Legacy Noteholders; the RCF Lenders; the TLB Lenders; the TLA Lenders; the Series I Lender; and the Series II Lender;

"**CoreCo Plan Debt**" means the 2026 Legacy Notes Debt, the 2029 Legacy Notes Debt, the R-1 Revolving Credit Facility Debt, the R-2 Revolving Credit Facility Debt, the Term Loan A Debt, the Term Loan B Debt, the Series I Loan Debt, and the Series II Loan Debt;

"**Court**" means the High Court of Justice of England and Wales and any appellate court in England and Wales having jurisdiction in connection with the Restructuring (including the Court of Appeal and the Supreme Court);

"**Debt Documents**" means the Term Loan A Agreement, Term Loan B Agreement, Revolving Credit Facility Agreement, Series I Loan Agreement, Series II Loan Agreement, the 2026 Legacy Notes Indenture, the 2029 Legacy Notes Indenture, the Finance Documents (as defined in or the equivalent of in each of these Debt Documents) and any related security and ancillary documents;

"**Deed of Undertaking**" means a deed of undertaking to the Plan Company in the form agreed by the parties thereto pursuant to which each of the parties thereto agrees to execute or procure to be executed all such documents, and to do or procure to be done all such acts and things as may be reasonably necessary or desirable to be done by it to implement the Restructuring as described in this Restructuring Plan and to be bound by and perform the terms of this Restructuring Plan and the Transaction Implementation Deed;

"**E-Mail Error Message**" means, with respect to an e-mail sent by one person to another under or in connection with this Restructuring Plan, an automatic error message received from an intended recipient (or the server by which such intended recipient is provided e-mail service) that:

(a)     such e-mail is undeliverable; or

(b)     there has been a failure to deliver such e-mail;

"**English Company Counsel**" means Daniel Bayfield KC, Ryan Perkins and Jon Colclough of South Square Chambers, instructed by the Group Legal Advisor to appear on behalf of the Plan Company before the Court in respect of the Restructuring Plan, or such other barrister as may be instructed by the Group Legal Advisor;

"**Excluded Liabilities**" means:

(a)     any Liability arising from criminal acts, fraud, gross negligence or wilful misconduct on the part of a Released Party, as determined by a judgment issued by a court of competent jurisdiction;

5

(b)     any Liability of any Released Advisor to its client arising under a duty of care which has been expressly assumed or acknowledged in writing by the relevant Advisor or which can only be excluded in accordance with applicable law and has not been so excluded, or which cannot be released, waived or excluded under applicable law;

(c)     any Liability of any accounting, restructuring or tax advisor of the Plan Company or any other member of the Group to the Released Parties or any other member of the Group and subject to the terms of any reliance letter, in relation to any report, memorandum or opinion provided by such advisor on which a Released Party is expressly entitled to rely pursuant to an executed reliance letter;

(d)     any Liability of the Plan Company or any other member of the Group with respect to any outstanding fees, costs and/or expenses properly incurred by any party's professional advisors (including the Advisors) in accordance with the terms of any such advisors' fee letters, engagement letters or other form of written agreement entered into by any member of the Group in connection with the Restructuring;

(e)     any Liabilities created by the Implementation Documents, the Restructuring Plan or any ancillary document thereto, including as a result of a failure by any party to comply with such documents;

(f)     any indemnity or reimbursement obligation owed (i) by a TLA Lender to the TLA Agent under the terms of Term Loan A Agreement, (ii) by a TLB Lender to the TLB Agent under the terms of the Term Loan B Agreement, or (iii) by a Revolving Facility Lender to the RCF Agent under the terms of the Revolving Credit Facility Agreement;

(g)     in the case of a Group Company: (i) any Liability of any director of such Group Company that would otherwise attach to that director in connection with any negligence, default, breach of duty or breach of trust, or that would be available upon the insolvency of such Group Company; and (ii) any Liability of a Group Advisor (solely in its capacity as advisor to such Group Company) that would otherwise attach to such Group Advisor in connection with any negligence, default, breach of duty or breach of trust, or that would be available upon the insolvency of such Group Company; and

(h)     any Liability of one Group Company to another Group Company that is expressly not released under the terms of the Separation Agreement or any other Implementation Document, which in each case, shall be solely governed by the terms and conditions thereunder;

"**Existing Obligor**" means each obligor under the Debt Documents from time to time;

"**Explanatory Statement**" means the explanatory statement dated 15 May 2026 relating to and issued by the Plan Company and NFE Brazil Newco in connection with this Restructuring Plan and the BrazilCo Plan pursuant to section 901D of the Act;

6

"**Group**" means NFE Inc. and its Subsidiaries (including the Plan Company) from time to time, with each being a "**Group Company**";

"**Group Advisor**" means:

(a)    the Group Legal Advisor;

(b)    English Company Counsel;

(c)    Houlihan Lokey Capital, Inc. and Alvarez & Marsal Europe LLP, as financial advisors to the Plan Company and the Group;

(d)    any local or specialist counsel engaged by any of the foregoing; and

(e)    any successors to the foregoing;

"**Group Legal Advisor**" means Skadden, Arps, Slate, Meagher & Flom LLP and its affiliates, as legal counsel to the Group, or any successor legal counsel to the Group, in respect of the Plans;

"**Holding Period Trust**" has the meaning given to it in the Holding Period Trust Deed;

"**Holding Period Trust Deed**" has the meaning given to it in the Transaction Implementation Deed;

"**Implementation Documents**" has the meaning given to it in the Transaction Implementation Deed;

"**Indebtedness**" has the meaning given to it in the Transaction Implementation Deed;

"**Information Agent**" means Kroll Issuer Services Limited in its capacity as information agent in connection with the Plans (and any successor information agent);

"**Legacy Noteholders**" means the 2026 Legacy Noteholders and the 2029 Legacy Noteholders;

"**Legacy Notes**" means the 2026 Legacy Notes and the 2029 Legacy Notes.

"**Legacy Notes Advisors**" means Paul Hastings LLP and Paul Hastings (Europe) LLP, as counsel to the Legacy Notes AHG;

"**Legacy Notes AHG**" means the ad hoc group of certain unaffiliated holders of Legacy Notes represented by Paul Hastings LLP and Paul Hastings (Europe) LLP as counsel;

"**Legacy Notes Trustee**" means U.S. Bank Trust Company, National Association in its capacity as trustee and the collateral agent in respect of the 2026 Legacy Notes and the 2029 Legacy Notes;

"**Legacy Notes Trustee Advisors**" means Greenberg Traurig, LLP, and Thompson Hine LLP, in each case as counsel to the Legacy Notes Trustee;

7

"**Liability**" means any present or future payment and discharge obligation, liability, claim, debt, claims for specific performance, damages or restitution, counterclaims, suits, rights of action, or rights whatsoever or howsoever arising, including, without limitation, for the payment of money or the performance of an act or obligation (whether deliberate or otherwise) or any failure to perform any obligation or any omission, whether for negligence, breach of duty, breach of trust or misrepresentation or otherwise, whether in respect of principal, interest or otherwise, whether actual or contingent, whether fixed or undetermined, whether admitted or disputed, whether known or unknown, whether owed jointly or severally and whether owed as principal, surety or in any capacity whatsoever and whether it arises at common law, in equity or by statute, in England and Wales or in any other jurisdiction under whatever applicable law, under any legal theory, and in any manner whatsoever, and "**Liabilities**" shall be construed accordingly;

"**Majority Akin/Evercore AHG Members**" means, as of any relevant time, members of the Akin/Evercore AHG that are Supporting Creditors holding, in the aggregate, greater than 50.0% of the aggregate outstanding principal amount of Term Loan B Debt then held by the members of the Akin/Evercore AHG that are Supporting Creditors;

"**Majority Legacy Notes Supporting Creditors**" means, as of any relevant time, members of the Legacy Notes AHG that are Supporting Creditors holding, in the aggregate, greater than 50.0% of the aggregate outstanding principal amount of the Legacy Notes then held by the members of the Legacy Notes AHG that are Supporting Creditors;

"**Majority Plan Creditors**" means, collectively, as of any relevant time, (i) the Majority Akin/Evercore AHG Members, (ii) the Majority PW/PWP AHG Members, (iii) the Majority RCF Supporting Creditors, (iv) solely with respect to any matter that (x) materially and adversely alters (1) the treatment of the 2026 Legacy Notes Debt or the 2029 Legacy Notes Debt, as applicable, under the Restructuring or (2) the rights or obligations of the Supporting Creditors who hold 2026 Legacy Notes Debt or 2029 Legacy Notes Debt, as applicable, under this Restructuring Plan, or (y) disproportionately alters the allocation of consideration to the holders of the 2026 Legacy Notes Debt or the 2029 Legacy Notes Debt as set forth on the Exchange Consideration Chart attached to the Restructuring Term Sheet, whether by decreasing the consideration allocated to holders of 2026 Legacy Notes Debt or the 2029 Legacy Notes Debt or increasing (including in the form of additional fees) the consideration allocated to holders of other Indebtedness, the Majority Legacy Notes Supporting Creditors and (v) solely with respect to any matter that (x) materially and adversely alters (1) the treatment of the Term Loan A Debt under the Restructuring or (2) the rights or obligations of the holders of Supporting Term Loan A Debt under this Restructuring Plan, or (y) disproportionately alters the allocation of consideration to the holders of the Term Loan A Debt as set forth on the Exchange Consideration Chart attached to the Restructuring Term Sheet, whether by decreasing the consideration allocated to holders of Term Loan A Debt or increasing (including in the form of additional fees) the consideration allocated to holders of other Indebtedness, the Majority TLA Supporting Creditors;

"**Majority Plan Creditors' Advisors**" means the Akin/Evercore AHG Advisors, the PW/PWP AHG Advisors and the RCF Advisors on behalf of, respectively, the

8

Majority Akin/Evercore AHG Members, the Majority PW/PWP AHG Members and the Majority RCF Supporting Creditors and, to the extent required, the TLA Advisors on behalf of the Majority TLA Supporting Creditors and the Legacy Notes Advisors on behalf of the Majority Legacy Notes Supporting Creditors;

"**Majority PW/PWP AHG Members**" means, as of any relevant time, members of the PW/PWP AHG that are Supporting Creditors holding, in the aggregate, greater than 50.0% of the aggregate outstanding principal amount of 2029 New Notes Debt then held by the members of the PW/PWP AHG that are Supporting Creditors;

"**Majority RCF Supporting Creditors**" means, as of any relevant time, holders of Revolving Credit Facility Debt that are Supporting Creditors holding, in the aggregate, greater than 50.0% of the aggregate outstanding principal amount of Revolving Credit Facility Debt then held by holders of Revolving Credit Facility Debt that are Supporting Creditors;

"**Majority TLA Supporting Creditors**" means, as of any relevant time, holders of Term Loan A Debt that are Supporting Creditors holding, in the aggregate, greater than 50.0% of the aggregate outstanding principal amount of Term Loan A Debt then held by such holders of Term Loan A Debt that are Supporting Creditors;

"**NFE Brazil Newco**" means NFE Brazil Newco Limited, a private company limited by shares incorporated in England and Wales;

"**NFE Financing**" means NFE Financing LLC, a Delaware limited liability company;

"**NFE Inc**." means New Fortress Energy Inc., a Delaware corporation;

"**Nominee**" means in respect of a CoreCo Plan Creditor, one or more persons or entities nominated by that CoreCo Plan Creditor pursuant to the Plan Creditor Letter to receive all or any part of the Plan Consideration on its behalf;

"**Notice**" means any notice or other written communication to be given under or in relation to the Restructuring Plan;

"**Notice Records**" means the names and addresses (including email addresses) contained in the Plan Company's records for a CoreCo Plan Creditor at 5:00 p.m. (London time) two Business Days before the date of a relevant Notice;

"**Plan Company**" has the meaning given to it in the Parties section.

"**Plan Consideration**" means the consideration to be received by each CoreCo Plan Creditor pursuant to this Restructuring Plan and in accordance with the Transaction Implementation Deed;

"**Plan Creditor Letter**" means a plan creditor letter, to be submitted online via the Plan Website to the Information Agent, in the form appended to the Explanatory Statement with such minor or technical amendments as the Court may approve;

"**Plan Creditors**" means, collectively, the BrazilCo Plan Creditors and the CoreCo Plan Creditors;

9

"**Plan Effective Date**" has the meaning given to that term in Clause 2.2;

"**Plan Meeting**" means a meeting of a class of CoreCo Plan Creditors convened in accordance with the permission of the Court pursuant to section 901C of the Act to consider and, if thought fit, approve this Restructuring Plan, including any adjournment thereof;

"**Plan Party**" or "**Party**" means the Plan Company, each CoreCo Plan Creditor and each Undertaking Party, and "**Plan Parties**" and "**Parties**" shall be construed accordingly;

"**Plan Sanction Order**" means the order or orders of the Court sanctioning the Restructuring Plan;

"**Plan Website**" means the website at https://deals.is.kroll.com/nfe;

"**Plans**" means, collectively, this Restructuring Plan and the BrazilCo Plan;

"**Proceedings**" means any process, action or other legal proceedings (including, without limitation, any demand, arbitration, alternative dispute resolution, judicial review, adjudication, execution, seizure, distraint, forfeiture, re-entry lien, enforcement of judgment or enforcement of any security), whether arising in connection with the Restructuring or otherwise;

"**PW/PWP AHG**" means the ad hoc group of certain unaffiliated 2029 New Noteholders represented by the PW/PWP AHG Advisors;

"**PW/PWP AHG Advisors**" means, collectively, Paul, Weiss, Rifkind, Wharton & Garrison LLP and Perella Weinberg Partners LP, as counsel and financial advisor, respectively, to the PW/PWP AHG, as well as other regulatory, tax, local, foreign, barristers (including Stephen Robins KC) and special counsel (in each case as notified to the Plan Company), in their respective capacities as counsel to the PW/PWP AHG;

"**R-1 Revolving Credit Facility**" means the facility drawn at approximately US$100 million as of the date of this Restructuring Plan under the Revolving Credit Facility Agreement;

"**R-1 Revolving Credit Facility Debt**" means all present and future moneys, debts and liabilities due, owing or incurred from time to time by any member of the Group to any agent, any issuing bank, any lender or any lender counterparty of the R-1 Revolving Credit Facility under or in connection with the R-1 Revolving Credit Facility (in each case, whether alone or jointly, or jointly and severally, with any other person, whether actually or contingently, and whether as principal, surety or otherwise);

"**R-2 Revolving Credit Facility**" means the facility drawn at approximately US$560 million as of the date of this Restructuring Plan under the Revolving Credit Facility Agreement;

"**R-2 Revolving Credit Facility Debt**" means all present and future moneys, debts and liabilities due, owing or incurred from time to time by any member of the Group to any agent, any issuing bank, any lender or any lender counterparty of the R-2

Revolving Credit Facility under or in connection with the R-2 Revolving Credit Facility (in each case, whether alone or jointly, or jointly and severally, with any other person, whether actually or contingently, and whether as principal, surety or otherwise);

"**RCF Advisors**" means Sidley Austin LLP, as counsel (together with any external counsel instructed by them in relation to the Restructuring Plan (including Felicity Toube KC and Matthew Abraham of South Square Chambers)) and FTI Consulting, Inc. and Moelis & Company as financial advisors, to the agent under the Revolving Credit Facility Agreement and each of their Affiliates and any other advisors retained by any of the foregoing in connection with the Restructuring in accordance with the Revolving Credit Facility Agreement;

"**RCF Agent**" means MUFG Bank, LTD, in its capacity as the administrative agent and as the collateral agent under the terms of the Revolving Credit Facility Agreement, or any successor thereof;

"**RCF Lenders**" means the lenders of record under the Revolving Credit Facility Agreement;

"**Record Date**" means the date on which the CoreCo Plan Creditors' entitlement to vote on this Restructuring Plan and the value of their CoreCo Plan Claims will be assessed, being 10 June 2026;

"**Released Advisors**" means:

(a)     the Group Legal Advisor;

(b)     English Company Counsel;

(c)     Houlihan Lokey Capital, Inc. and Alvarez & Marsal Europe LLP, as financial advisors to the Plan Company and the Group;

(d)     the Advisors;

(e)     any local or specialist counsel engaged by any of the foregoing; and

(f)     any successors to the foregoing;

"**Released Parties**" means, each in their various respective capacities as such in connection with the Restructuring and the Restructuring Plan:

(a)     the Plan Company;

(b)     each Group Company;

(c)     each Undertaking Party;

(d)     each Plan Creditor and each Nominee (as applicable);

(e)     each: (i) Released Advisor; (ii) Advisor Released Person; and (iii) any person acting on the instructions of, or providing services to, any of the foregoing in connection with the Restructuring Plan or the Restructuring;

11

(f)    each Affiliate of the persons listed at (a) to (e) above; and

(g)    each of the respective officers, directors, employees, partners, executives and agents (or equivalents) of the persons listed in (a) to (f) above (each, a "**Representative**");

"**Restructuring**" has the meaning given to it in the Transaction Implementation Deed;

"**Restructuring Effective Date**" has the meaning given to it in the Transaction Implementation Deed;

"**Restructuring Long-Stop Time**" has the meaning given to it in the Transaction Implementation Deed;

"**Restructuring Plan**" means this restructuring plan proposed by the Plan Company under Part 26A of the Act (including the compromise and arrangement pursuant thereto) in the present form as set out herein or with, or subject to, any modification, addition or condition which the Court may think fit to approve or impose, as appropriate, provided any such modification, addition or condition is approved by the Majority Plan Creditors to the extent required pursuant to Clause 6 (*Modifications of this Restructuring Plan*) herein;

"**Restructuring Support Agreement**" means the Restructuring Support Agreement dated 17 March 2026 originally entered into between, among others, NFE Inc., the Plan Company and the Supporting Creditors (as defined therein) and acceded to by NFE Brazil Newco on 9 April 2026 and as amended, supplemented and/or restated from time to time;

"**Restructuring Term Sheet**" means the term sheet relating to the Restructuring appended to the Restructuring Support Agreement;

"**Revolving Credit Facility Agreement**" means the Credit Agreement, dated as of 15 April 2021, by and among NFE Inc., the guarantors from time to time party thereto, the lenders and issuing banks from time to time party thereto, and MUFG Bank Ltd., as administrative agent and collateral agent (as amended, supplemented or otherwise modified from time to time);

"**Revolving Credit Facility Debt**" means the R-1 Revolving Credit Facility Debt and the R-2 Revolving Credit Facility Debt;

"**Revolving Facility Lenders**" means the lenders of record under the Revolving Credit Facility Agreement;

"**Separation Agreement**" has the meaning given to it in the Transaction Implementation Deed;

"**Series I Lender**" means the lender under the Series I Loan Agreement;

"**Series I Loan**" means the loan made under the Series I Loan Agreement;

12

"**Series I Loan Agreement**" means the senior secured credit agreement entered into between, among others, the Brazil Parent as lender and NFE Inc. as borrower on 22 November 2024;

"**Series I Loan Debt**" means all present and future moneys, debts and liabilities due, owing or incurred from time to time by any member of the Group to the lenders of the Series I Loan under or in connection with the Series I Loan Agreement (in each case, whether alone or jointly, or jointly and severally, with any other person, whether actually or contingently, and whether as principal, surety or otherwise);

"**Series II Lender**" means the lender under the Series II Loan Agreement;

"**Series II Loan**" means the loan made under the Series II Loan Agreement;

"**Series II Loan Agreement**" means the senior secured credit agreement entered into between, among others, NFE Financing as lender and NFE Inc. as borrower on 6 December 2024;

"**Series II Loan Debt**" means present and future moneys, debts and liabilities due, owing or incurred from time to time by any member of the Group to the lenders of the Series II Loan under or in connection with the Series II Loan Agreement (in each case, whether alone or jointly, or jointly and severally, with any other person, whether actually or contingently, and whether as principal, surety or otherwise);

"**Subsidiary**" means, in respect of an entity, any entity in respect of which it has direct or indirect control or owns directly or indirectly more than 50% of the voting rights, voting capital or similar rights of ownership, and "control" for this purpose means the power to direct the management and the policies of the entity whether through the ownership of voting capital, by contract or otherwise;

"**Supporting Creditor**" has the meaning given to it in the Transaction Implementation Deed;

"**Supporting Term Loan A Debt**" has the meaning given to it in the Restructuring Support Agreement;

"**Term Loan A**" means the loans and other extensions of credit made under the Term Loan A Agreement;

"**Term Loan A Agreement**" means the credit agreement entered into between, among others, NFE Inc., the TLA Agent and the lenders from time to time party thereto on 19 July 2024, as amended from time to time;

"**Term Loan A Debt**" means all present and future moneys, debts and liabilities due, owing or incurred from time to time by any member of the Group to the lenders of the Term Loan A under or in connection with the Term Loan A Agreement (in each case, whether alone or jointly, or jointly and severally, with any other person, whether actually or contingently, and whether as principal, surety or otherwise);

"**Term Loan B**" means the loans and other extensions of credit made under the Term Loan B Agreement;

13

"**Term Loan B Agreement**" means the credit agreement entered into between, among others, NFE Inc., the TLB Agent, and the lenders from time to time party thereto on 30 October 2023, as amended from time to time;

"**Term Loan B Debt**" means all present and future moneys, debts and liabilities due, owing or incurred from time to time by any member of the Group to the lenders of the Term Loan B under or in connection with the Term Loan B Agreement (in each case, whether alone or jointly, or jointly and severally, with any other person, whether actually or contingently, and whether as principal, surety or otherwise);

"**TLA Advisors**" means Seward & Kissel LLP, as counsel to the TLA Agent under the Term Loan A Agreement;

"**TLA Agent**" means Wilmington Trust, National Association, in its capacity as administrative agent and collateral agent under the Term Loan A Agreement, or any successor thereof;

"**TLA Lenders**" means the lenders of record under the Term Loan A Agreement;

"**TLB Advisors**" means Seward & Kissel LLP, as counsel to the TLB Agent under the Term Loan B Agreement;

"**TLB Agent**" means Wilmington Trust, National Association, in its capacity as administrative agent and collateral agent under the Term Loan B Agreement, or any successor thereof;

"**TLB Lenders**" means the lenders of record under the Term Loan B Agreement;

"**Transaction Implementation Deed**" means the transaction implementation deed to be entered into on (or around) the Plan Effective Date between, among others, the Plan Company, NFE Brazil Newco, the CoreCo Plan Creditors and the creditors of NFE Brazil Newco subject to the BrazilCo Plan, in Agreed Form; and

"**Undertaking Party**" means each of the entities listed in Schedule 1.

## 1.2    Interpretation

1.2.1    In this Restructuring Plan, unless the context otherwise requires or as otherwise expressly provided:

(a)    references to Clauses and Schedules are references to the Clauses of, and Schedules to, the Restructuring Plan and a reference to this "Restructuring Plan" includes a reference to each of the Schedules to this Restructuring Plan;

(b)    references to a statute or statutory provision include the same as subsequently modified, amended, supplemented or re-enacted from time to time;

(c)    references to the Information Agent, the Plan Company, a CoreCo Plan Creditor, an Undertaking Party, or any other person shall be construed so as to include its and any subsequent successors in title, permitted assigns and permitted transferees;

(d)    where references to any actions, provisions or terms are stated as requiring the consent of the Majority Plan Creditors, such consent shall be deemed to be granted

14

if it has been provided in writing (including by e-mail) by the Majority Plan Creditors' Advisors;

(e) references to a person include references to an individual, firm, partnership, company, corporation, unincorporated body of persons or any state or state agency;

(f) references to an agreement, deed or document will be deemed also to refer to such agreement, deed or document as amended, supplemented, restated, varied, verified, replaced and/or novated (in whole or in part) from time to time and to any agreement, deed or document executed pursuant thereto, provided that such amendment, supplement, restatement, variation, verification, replacement and/or novation has, to the extent it relates to an Implementation Document or this Restructuring Plan, been made in accordance with the terms of this Restructuring Plan, the Transaction Implementation Deed or otherwise the terms of such Implementation Document;

(g) references to an agreement, deed or document shall include any schedules, annexes and appendices to such agreement, deed or document;

(h) references to (or to any specified provision of) the Restructuring Plan shall be construed as references to the Restructuring Plan as in force for the time being;

(i) references to a CoreCo Plan Creditor shall be references to a CoreCo Plan Creditor in its capacity as a CoreCo Plan Creditor and an obligation or Liability of a CoreCo Plan Creditor shall apply to its successors, transferees and assigns (as applicable);

(j) the singular includes the plural and vice versa and words importing one gender shall include all genders;

(k) headings to Clauses are for ease of reference only and shall not affect the interpretation of the Restructuring Plan;

(l) unless otherwise stated, all references in the Restructuring Plan to dates and times are to the date and time prevailing in London, United Kingdom;

(m) "including" or "include" shall be deemed to mean including or include without limitation;

(n) "or" is not exclusive;

(o) general words introduced by the word "other" shall not be given a restrictive meaning by reason of the fact that they are preceded by words indicating a particular class of acts, matters or things and general words shall not be given a restrictive meaning by reason of the fact that they are followed by particular examples intended to be embraced by the general words; and

(p) "**US$**" denotes the lawful currency of the United States of America.

**2      APPLICATION AND EFFECTIVENESS OF THE RESTRUCTURING PLAN**

**2.1**     As soon as reasonably practicable following, and in any event within two Business Days of, the granting of the Plan Sanction Order (or such later date as agreed between the Plan Company and the Majority Plan Creditors' Advisors, each acting reasonably), the Plan

Company shall deliver a certified copy of the Plan Sanction Order to the Registrar of Companies in England and Wales for registration in accordance with section 901F of the Act.

**2.2**   Unless otherwise stated and subject to Clause 8.1, the Restructuring Plan shall become effective and legally binding on the Plan Company and each of the CoreCo Plan Creditors in accordance with its terms on and from the date certified copies of the Plan Sanction Order and the order or orders of the Court sanctioning the BrazilCo Plan are delivered to the Registrar of Companies for registration (the "**Plan Effective Date**").

**2.3**   The compromises and arrangements effected by the Restructuring Plan will bind:

**2.3.1**   all CoreCo Plan Creditors and all of their respective rights, title and interests to CoreCo Plan Claims and, in each case, their respective permitted successors and assigns;

**2.3.2**   the Plan Company and its respective permitted successors and assigns;

**2.3.3**   subject to the terms of the applicable Deed of Undertaking, each Undertaking Party and its respective permitted successors and assigns; and

**2.3.4**   each other person that has undertaken to be bound by the terms of this Restructuring Plan and their respective permitted successors and assigns.

**2.4**   The Plan Company shall notify the Information Agent in accordance with Clause 10 (*Notice*) as soon as reasonably practicable following the occurrence of the Plan Effective Date, and the Information Agent shall make such notice available on the Plan Website.

**3**   **GRANT OF AUTHORITY TO EXECUTE THE IMPLEMENTATION DOCUMENTS**

**3.1**   **Plan Company's Authority to Execute and Give Effect to the Implementation Documents**

**3.1.1**   Subject to the terms of this Clause 3 and Clause 8 (*Termination*) below, with effect on and from the Plan Effective Date, in consideration of the rights and benefits conferred on the CoreCo Plan Creditors under this Restructuring Plan and solely for the purpose of giving effect to the terms of this Restructuring Plan (and the transactions contemplated by it), notwithstanding any term of any other agreement, instrument or arrangement whatsoever (other than the Implementation Documents), each CoreCo Plan Creditor and, if applicable, each Nominee, hereby irrevocably appoints the Plan Company as its true and lawful attorney and agent, acting by any director, officer, employee or other duly authorised representative, for and on its behalf and in its name, and irrevocably authorises, directs, empowers and instructs the Plan Company, to:

(a)   enter into, execute and deliver as a deed, on behalf of each CoreCo Plan Creditor in its capacity as a CoreCo Plan Creditor, the Transaction Implementation Deed, such that each CoreCo Plan Creditor will become a party to and be bound by the Transaction Implementation Deed;

(b)   enter into, sign, execute, notarise, acknowledge, release, deliver (whether as a deed or otherwise) and, where applicable, file each Implementation Document to which

16

such CoreCo Plan Creditor is expressed to be a party, such that such CoreCo Plan Creditor shall be a party to and bound by each such document as if it had executed it personally, in each case in its capacity as CoreCo Plan Creditor;

(c)   enter into, sign, execute and deliver all deeds, agreements, instruments, certificates, confirmations, notices, elections, transfers, assignments, releases, directions, instructions and filings (including security, guarantee, escrow, perfection and regulatory filings) which are scheduled to, contemplated by, or expressly referred to in, or reasonably required to implement or give effect to this Restructuring Plan or any Implementation Document to which such CoreCo Plan Creditor is expressed to be a party;

(d)   agree, consent to and effect, on behalf of such CoreCo Plan Creditor, any amendment, waiver, modification or supplement to any Implementation Document or ancillary document (to which such CoreCo Plan Creditor is expressed to be a party) which the Plan Company considers necessary or reasonably desirable in connection with the Restructuring provided that any such amendment, modification or supplement is made in accordance with Clause 6 (*Modifications of this Restructuring Plan*);

(e)   give all notices, confirmations, directions and instructions to any trustee, agent, paying agent, information agent, clearing system, registrar, custodian or Administrative Party as may be required or desirable to give effect to this Restructuring Plan and the Implementation Documents;

(f)   execute and deliver any release, discharge or waiver required to implement the releases and compromises and extinguishment of claims contemplated by this Restructuring Plan and grant the releases under and in accordance with the Transaction Implementation Deed;

(g)   take any step, make any determination and do any act which the Plan Company considers necessary to carry out, enforce or consummate this Restructuring Plan and the transactions contemplated by it, including actions required under the laws of any jurisdiction (acting reasonably and, with respect to any step, determination or action not contemplated by the Transaction Implementation Deed, with the consent of the Majority Plan Creditors (unless such step, determination or action is required by applicable law, in which case no such consent shall be required but if permitted, the Plan Company shall provide written notice of any such step, determination or action being undertaken to the CoreCo Plan Creditors)), provided that such related or ancillary actions do not change any right or obligation of, or impose an additional obligation (by reference to such rights or obligations as are contemplated as at the Plan Effective Date) on, a CoreCo Plan Creditor and do not adversely affect any CoreCo Plan Creditor;

(h)   grant powers of attorney or authorities (under English law or any other applicable law) with equivalent or lesser scope to the power of attorney granted by this Clause 3 to any person selected by the Plan Company for the purposes of implementing the documents and steps set out in this Clause 3.1.1; and

(i)   do all such other related or ancillary acts and things as the Plan Company considers (acting reasonably and, with respect to any action not contemplated by the Transaction Implementation Deed, with the consent of the Majority Plan Creditors) to be reasonably necessary or desirable to the full and timely implementation of this

Restructuring Plan and the transactions contemplated by it, provided that such other acts or things do not change any right or obligation of, or impose an additional obligation (by reference to such rights or obligations as are contemplated as at the Plan Effective Date) on, a CoreCo Plan Creditor and do not adversely affect any CoreCo Plan Creditor.

3.2   Subject to the terms of this Clause 3 and Clause 8 (*Termination*) below, the authority and power of attorney granted pursuant to this Clause 3 is irrevocable, being granted for valuable consideration and to secure the performance of obligations under this Restructuring Plan.

3.3   Each CoreCo Plan Creditor waives any right to revoke or terminate such authority except as expressly provided in this Restructuring Plan.

3.4   Each CoreCo Plan Creditor and, pursuant to the applicable Confirmation Deed, each respective Nominee (as applicable) irrevocably agrees that it shall be bound by, and shall comply with, each Implementation Document and any ancillary document to which such CoreCo Plan Creditor or Nominee is a party (as if it were an original executing party) after such document has been fully executed, dated, released and delivered by the Plan Company on its behalf pursuant to, and in accordance with, this Clause 3 and the Transaction Implementation Deed.

3.5   The authority granted pursuant to this Clause 3 shall:

3.5.1   continue until the earlier of (i) Restructuring Effective Date or (ii) such other termination date as expressly provided in this Restructuring Plan, at which time it shall automatically expire; and

3.5.2   automatically lapse in respect of any Implementation Document or ancillary document once that document has been fully executed, released and delivered, whereupon it may thereafter be amended only in accordance with its terms.

3.6   Nothing in this Clause 3 authorises or permits the Plan Company to commence any Proceedings in the name of, or on behalf of, any CoreCo Plan Creditor.

3.7   Promptly following any amendments, modification or variations being made to any Implementation Document pursuant to this Clause 3, the Plan Company shall procure that such Implementation Document (as amended, modified or varied) is promptly made available to the CoreCo Plan Creditors and each relevant Undertaking Party via the Plan Website and in accordance with the notice provisions of the applicable Deed of Undertaking (if any).

3.8   **Administrative Parties' Authority**

3.8.1   Subject to the terms of any Deed of Undertaking or applicable Implementation Document, with effect on and from the Plan Effective Date, each of the CoreCo Plan Creditors hereby irrevocably authorises and instructs each applicable Administrative Party, as their agent and attorney (acting by any one of their duly appointed representatives) to:

(a)   enter into, execute, deliver and perform (whether as a deed or otherwise) each Implementation Document to which such Administrative Party is expressed to be a party, provided that such Implementation Documents (other than the Transaction

18

Implementation Deed) shall only become effective in accordance with their respective terms and as provided in the Transaction Implementation Deed and this Restructuring Plan, whereupon they shall become binding on all parties thereto;

(b) take all steps and do all other things as may be necessary or reasonably desirable to give effect to or implement the Restructuring, this Restructuring Plan and the transactions contemplated by it, including entering into, executing and delivering all such documents as the Plan Company reasonably requests or the relevant Administrative Party considers reasonably necessary or desirable for such purpose, and taking any step expressed in this Restructuring Plan or any Implementation Document to be taken by such Administrative Party;

(c) act and rely, without further verification, on any written instruction from the Plan Company (acting on behalf of the CoreCo Plan Creditors pursuant to Clause 3.1) to take any action referred to in this Clause 3.8 or otherwise under this Restructuring Plan, and be entitled to assume that any such instruction complies with the terms of this Restructuring Plan and the Implementation Documents;

(d) give all such instructions, consents or confirmations to any trustee, agent, security agent, paying agent, registrar, clearing system or other Administrative Party as are reasonably requested by the Plan Company (in accordance with the authority granted to it under this Restructuring Plan, where applicable), and any other directions that may reasonably be requested by the Plan Company (in accordance with the authority granted to it under this Restructuring Plan, where applicable), for the purposes of implementing any step contemplated by the Restructuring or this Restructuring Plan; and

(e) take each step under this Restructuring Plan or any Implementation Document expressed to be taken by the relevant Administrative Party, including the giving, execution, delivery and performance of any obligations, consents, confirmations, acknowledgements, agreements, waivers or authorizations, in each case as reasonably requested by the Plan Company (in accordance with the authority granted to it under this Restructuring Plan, where applicable) for the purposes of implementing this Restructuring Plan and subject to applicable law and the terms of the relevant Implementation Documents, and

each CoreCo Plan Creditor acknowledges and irrevocably confirms, authorizes, directs, and ratifies any such action taken by any Administrative Party on or prior to the Plan Effective Date, and in each case provided that each Administrative Party shall have all of the protections, immunities, rights, powers, authorities, indemnities, exculpations, exclusions or limitations of liability and/or benefits conferred on it under and by the applicable Debt Documents governing its appointment and, upon such document's effectiveness and in respect of actions taken after the effectiveness thereof, the Implementation Documents.

**3.8.2** No Administrative Party shall have any Liability to the Plan Company, any CoreCo Plan Creditor or any of their respective Affiliates for any action taken, document executed or reliance placed on any instruction given to it in accordance with Clause 3.8.1 above, except to the extent arising from its fraud, gross negligence or willful misconduct as determined by a final non-appealable judgment issued by a court of competent jurisdiction.

3.8.3    In complying with any authorisations, instructions or requests pursuant to this Clause 3.8, each Administrative Party:

(a)    shall be entitled to assume that any instructions received by it pursuant to this Restructuring Plan have been duly given in accordance with its terms and the relevant Debt Documents or Implementation Documents;

(b)    shall be entitled to assume that, unless it has received notice to the contrary, such instructions have not been revoked;

(c)    shall not be obliged to do or omit to do anything if it would, or might in its reasonable opinion, constitute a breach of any applicable law, regulation or contractual obligation or any duty binding upon it;

(d)    shall have only those duties, obligations and responsibilities as are expressly specified in this Restructuring Plan and the Implementation Documents to which it is a party (and no others shall be implied), and such duties shall be of a mechanical and administrative nature;

(e)    shall not be responsible for the legality, validity, effectiveness, adequacy or enforceability of any Implementation Document or any transaction contemplated by this Restructuring Plan; and

(f)    shall not be liable (other than in the case of fraud, gross negligence or willful misconduct on the part of such Administrative Party as determined by a final non-appealable judgment issued by a court of competent jurisdiction) for any loss, Liability or damage, or any failure or delay in the performance of its obligations, arising out of or in connection with:

(i)    any action taken or omitted to be taken in accordance with instructions received pursuant to this Restructuring Plan;

(ii)    the exercise or non-exercise of any right, power, authority or discretion conferred on it; or

(iii)    any event or circumstance beyond its reasonable control, including (without limitation) governmental action, market disruption, failure of systems or communications, natural events or industrial action.

3.9    The authorities, appointments and instructions granted in Clauses 3.1 and 3.8 shall be treated, for all purposes whatsoever and without limitation, as having been granted by deed.

4    **DEEDS OF UNDERTAKING**

4.1    Subject to Clause 8 (*Termination*) and the terms of the Deeds of Undertaking executed by them, each of the Undertaking Parties severally undertakes, with effect on and from the Plan Effective Date: (i) to be bound by, and to comply with, and to perform, the obligations expressed to apply to it in this Restructuring Plan and the Undertakings (as defined therein) set out in its Deed of Undertaking, and (ii) to take all steps and execute all such documents as may be necessary or reasonably desirable for the purpose of giving effect to this Restructuring Plan, including executing and delivering (through power of attorney appointed under the Deed of Undertaking or otherwise) the Implementation Documents to which they will be a party and the documentary conditions precedent (if any) applicable to

20

them. Each CoreCo Plan Creditor (in respect of the applicable Administrative Parties who are Undertaking Parties only) and the Plan Company ratifies the execution by each Undertaking Party of its Deed of Undertaking and the taking of any actions by such Undertaking Party pursuant to this Clause 4.1.

## 5   CLOSING STEPS AND PLAN CONSIDERATION

### 5.1   Closing Steps

**5.1.1**   As soon as reasonably practicable following the Plan Effective Date, the Plan Company shall execute the Transaction Implementation Deed for and on behalf of itself, the applicable Undertaking Parties as attorney for such Undertaking Parties in accordance with their Deeds of Undertaking, and, in accordance with Clause 3 (*Grant of Authority to Execute the Implementation Documents*), on behalf of the CoreCo Plan Creditors.

**5.1.2**   The steps to be taken to implement the Restructuring and the transactions contemplated in the Plans (the "**Closing Steps**") shall take place in accordance with, and in the order and at the times specified in, the terms of the Transaction Implementation Deed.

**5.1.3**   The applicable Implementation Documents shall be signed, dated and released in accordance with the Transaction Implementation Deed.

### 5.2   Plan Consideration

**5.2.1**   The CoreCo Plan Creditors acknowledge and agree that the CoreCo Plan Creditors shall:

(a)   receive their Plan Consideration in accordance with the terms set out in the Transaction Implementation Deed; and

(b)   give the authorities, instructions, undertakings, releases, ratifications, and waivers in favour of the Plan Company and the Released Parties, where applicable, in consideration of the rights provided to each CoreCo Plan Creditor under this Restructuring Plan and the Transaction Implementation Deed.

**5.2.2**   The Plan Consideration of the CoreCo Plan Creditors shall be calculated and paid (or issued, as applicable) in accordance with the Transaction Implementation Deed, including that a CoreCo Plan Creditor may receive Plan Consideration via the Holding Period Trust if necessary and in accordance with the terms of the Holding Period Trust Deed, and shall include the following Plan Consideration Instruments (each as defined in the Transaction Implementation Deed):

| CoreCo Plan Debt | Plan Consideration Instruments |
|---|---|
| 2026 Legacy Notes Debt | CoreCo Common Stock |
| 2029 Legacy Notes Debt | CoreCo Preferred Stock |
| Series I Loan Debt | CoreCo Common Stock |
| Series II Loan Debt | CoreCo Preferred Stock |

21

| CoreCo Plan Debt | Plan Consideration Instruments |
|---|---|
| R-1 Revolving Credit Facility Debt | CoreCo Common Stock<br>CoreCo Preferred Stock<br>New CoreCo Term Loans<br>FLNG 2 Term Loans<br>FLNG 2 Preferred Equity |
| R-2 Revolving Credit Facility Debt | CoreCo Common Stock<br>CoreCo Preferred Stock<br>New CoreCo Term Loans<br>FLNG 2 Term Loans<br>FLNG 2 Preferred Equity<br>RCF-2 / TLA BrazilCo Equity Pool |
| Term Loan A Debt | CoreCo Common Stock<br>CoreCo Preferred Stock<br>New CoreCo Term Loans<br>FLNG 2 Term Loans<br>FLNG 2 Preferred Equity<br>RCF-2 / TLA BrazilCo Equity Pool |
| Term Loan B Debt | CoreCo Common Stock<br>CoreCo Preferred Stock<br>New CoreCo Term Loans<br>FLNG 2 Term Loans<br>FLNG 2 Preferred Equity |

**5.3    Standstill**

**5.3.1**    On and from the Plan Effective Date until the Restructuring Effective Date, or if earlier, until the termination of this Restructuring Plan in accordance with Clause 8 (*Termination*), each CoreCo Plan Creditor shall not (and no person or entity shall be entitled to, on behalf of such CoreCo Plan Creditor), in any jurisdiction:

(a)    exercise or seek to exercise any rights, remedies, powers or discretions (including any right to accelerate, enforce any guarantee or make any demand in respect of any Liability) under or in connection with the Debt Documents, or instruct or direct any other person to do so;

(b)    commence, continue or take any step in relation to any legal, judicial, administrative, arbitral or other proceedings against the Plan Company or any other Existing Obligor or their respective assets or proceeds thereof (including the

enforcement of any judgment, order, award, lien or security), or instruct or direct any other person to do so, in each case in connection with the Debt Documents (other than any action taken in response to, or in connection with, any proceedings commenced by or on behalf of any member of the Group);

(c) take any step to enforce, attach, sequester or levy execution against any asset of the Plan Company or any other Existing Obligor, or to enforce or realise any security or other encumbrance, or instruct or direct any other person to do so, in each case in connection with the Debt Documents; or

(d) take any action which would, or would reasonably be expected to, impede, delay or frustrate the implementation of the transactions contemplated by this Restructuring Plan,

in each case, other than as expressly contemplated by, and in accordance with, this Restructuring Plan, the Transaction Implementation Deed or any other Implementation Document, or where such action is taken for the purpose of giving effect to the Restructuring.

## 6   MODIFICATIONS OF THIS RESTRUCTURING PLAN

6.1   The Plan Company may, subject to the terms of the Restructuring Support Agreement (including the consent rights contained therein), at any hearing to sanction this Restructuring Plan, acting reasonably and in good faith, consent on behalf of the CoreCo Plan Creditors to any modification, amendment, variation or supplement to or of this Restructuring Plan, the Transaction Implementation Deed or any other Implementation Document on terms or conditions that the Court may think fit to approve or impose for the purpose of consummating or implementing this Restructuring Plan, provided that such modification, amendment, variation or supplement cannot reasonably be expected to, directly or indirectly: (i) have a material and adverse or, relative to the other CoreCo Plan Creditors, disproportionate effect on the rights or interests of a CoreCo Plan Creditor under this Restructuring Plan or any Implementation Document; or (ii) alter any right or obligation, or impose any additional or new material obligation on any CoreCo Plan Creditor (by reference to such rights or obligations as contemplated as at the Record Date), in each case unless such CoreCo Plan Creditor consents in writing.

6.2   After the Plan Sanction Order has been granted, the terms of this Restructuring Plan may be amended, waived or supplemented with the consent of the Plan Company and the Majority Plan Creditors, provided that such amendment, waiver or supplement is only of a technical or non-material nature or to correct a manifest error, and provided further that any such proposed amendment, waiver or supplement cannot reasonably be expected to, directly or indirectly: (i) have a material and adverse or, relative to the other CoreCo Plan Creditors, disproportionate effect on the rights or interests of a CoreCo Plan Creditor under this Restructuring Plan or any Implementation Document; or (ii) alter any right or obligation, or impose any additional or new material obligation on any CoreCo Plan Creditor (by reference to such rights or obligations as contemplated as at the Record Date), in each case unless such CoreCo Plan Creditor consents in writing.

6.3   No modification, amendment, variation or supplement shall be made to this Clause 6 without the consent of each CoreCo Plan Creditor, and no modification, amendment or variation to the designation of documents as Implementation Documents hereunder shall be made without the consent of the Majority Plan Creditors. No modification, amendment,

23

variation or supplement that affects the rights or duties of any Administrative Party shall be made without the consent of such Administrative Party.

**6.4**   The Plan Company shall promptly notify the CoreCo Plan Creditors (by notice to the Majority Plan Creditors' Advisors and by the Information Agent making such notice available on the Plan Website) and each Administrative Party (in accordance with the notice provisions of the applicable Deed of Undertaking) of the occurrence of any modification, amendment or variation made to this Restructuring Plan or any Implementation Document in accordance with this Clause 6.

**6.5**   Nothing in this Restructuring Plan or the Transaction Implementation Deed shall govern the modification, amendment or waiver of any Implementation Document once such document becomes effective in accordance with its terms.

**7      RELEASES**

**7.1**   Subject to Clause 7.2, with effect from the Restructuring Effective Date, each Plan Party (on behalf of itself and each of its permitted successors and assigns) irrevocably, unconditionally, fully and absolutely:

   **7.1.1**   pursuant to this Restructuring Plan, waives, releases and forever discharges any and all actions, proceedings, claims, damages, counterclaims, complaints, liabilities, liens, rights, demands, causes of action, set-offs or other obligations, whether present or future, prospective or contingent, whether in this jurisdiction or any other or under any law, of whatsoever nature and howsoever arising, whether in law or in equity, in contract (including, but not limited to, breaches or non-performances of contract), in statute or in tort (including, but not limited to, negligence and misrepresentation) or in any other manner whatsoever, breaches of statutory duty, for contribution, or for interest and/or costs and/or disbursements, whether or not for a fixed or unliquidated amount, whether filed or unfiled, whether asserted or unasserted, whether or not presently known to the parties or to the law, in each case that it ever had, may have or hereafter can, shall or may have arising out of actions, omissions or circumstances occurring on or prior to the Restructuring Effective Date against each and any Released Party whatsoever or howsoever arising (and notwithstanding any subsequent facts or information becoming known following the Restructuring Effective Date), in relation to or arising directly or indirectly out of or in connection with: (a) the negotiation, preparation, sanction or implementation of the Plans and/or the Restructuring; or (b) the CoreCo Plan Claims (in each case, including, without limitation, the negotiation, preparation, sanction, execution or implementation of any Implementation Documents);

   **7.1.2**   pursuant to this Restructuring Plan, waives, releases and forever discharges all rights, title and interest it has in the CoreCo Plan Claims, and all Liabilities owed by a Group Company to any Plan Party in relation to such CoreCo Plan Claims; and

   **7.1.3**   undertakes to the Released Parties that it will not commence or continue, or instruct, direct or authorise any other person to commence or continue, any process, action, other legal proceedings (including, without limitation, any demand, arbitration, alternative dispute resolution, judicial review, adjudication, execution, seizure, distraint, forfeiture, re-entry, lien, enforcement of judgment or enforcement of any security), in any jurisdiction whatsoever against any Released Party in respect of

24

the actions ratified or the waivers, releases, and discharges referred to in Clauses 7.1.1 and 7.1.2 above.

**7.2**    Clause 7.1 shall not discharge, limit, vary, impact, compromise or otherwise affect in any way: (i) the Excluded Liabilities, (ii) any rights of any Plan Party arising under or in connection with the Implementation Documents (including guarantees or security interests or other obligations and any rights to submit claims and, if eligible, receive distributions in accordance with the Restructuring Plan or any Implementation Document), or (iii) any claims of any Plan Party which may arise or accrue in relation to acts, omissions or circumstances occurring after the Restructuring Effective Date.

**7.3**    Nothing in this Restructuring Plan shall prevent a CoreCo Plan Creditor from responding to or taking any action to defend itself in any claims or Proceedings which are asserted against it or any of its Representatives.

## 8    TERMINATION

**8.1**    This Restructuring Plan shall terminate with immediate effect upon the occurrence of any of the following events:

**8.1.1**    the Restructuring Effective Date does not occur on or before the Restructuring Long-Stop Time; or

**8.1.2**    the Transaction Implementation Deed terminates in accordance with its terms prior to the Restructuring Effective Date (other than as a result of the Restructuring Effective Date having occurred).

**8.2**    Upon termination of this Restructuring Plan pursuant to Clause 8.1:

**8.2.1**    the terms of and the obligations on, and rights granted to, the Plan Parties under or pursuant to this Restructuring Plan and any Implementation Document shall lapse and be of no further force or effect;

**8.2.2**    all compromises, arrangements and releases provided for under or pursuant to this Restructuring Plan and each other Implementation Document shall be of no effect and shall be construed as if this Restructuring Plan and each other Implementation Document had never become effective;

**8.2.3**    the rights and obligations of the CoreCo Plan Creditors shall remain unaffected by this Restructuring Plan and shall be reinstated and remain in full force and effect as they applied immediately prior to the Plan Effective Date; and

**8.2.4**    any defaults under any agreement governing the terms of any CoreCo Plan Claim, including the Debt Documents, and any consequences thereof (including any alleged deemed or actual acceleration) shall be reinstated as if such default had been continuing since the date on which it originally occurred or was deemed to occur.

**8.3**    Promptly following termination of this Restructuring Plan, the Plan Parties shall execute such documents and perform such acts and things as are reasonably necessary and/or

desirable to give effect to Clause 8.2 and 8.4 (including, where applicable, reversing any steps taken in contemplation of the implementation of the Restructuring).

8.4    In the event of termination of this Restructuring Plan pursuant to this Clause 8, the Plan Company shall promptly notify all CoreCo Plan Creditors (by notice to the Majority Plan Creditors' Advisors and by the Information Agent making such notice available on the Plan Website) and the Administrative Parties, and any release, standstill, power of attorney, instruction or authority granted pursuant to this Restructuring Plan or any Implementation Document shall be automatically revoked and terminated. Any action taken under any power of attorney granted pursuant to this Restructuring Plan shall be automatically void and of no further force or effect.

8.5    This Clause 8, Clause 1 (*Definitions and Interpretation*) and Clause 12 (*Governing Law and Jurisdiction*) shall survive any termination of this Restructuring Plan.

## 9    GENERAL RESTRUCTURING PLAN PROVISIONS

### 9.1    Ratification

9.1.1    In consideration for its rights and entitlements under this Restructuring Plan, and subject to the occurrence of, the Restructuring Effective Date:

(a)    each Plan Party hereby irrevocably ratifies and confirms everything which:

(i)    the Plan Company and its respective directors, officers or other duly appointed representatives have lawfully done or caused to be done, to the extent compliant with the terms of this Restructuring Plan and the Implementation Documents;

(ii)    was lawfully done or caused to be done by any Undertaking Party or its representatives pursuant to any authority conferred by this Restructuring Plan or the Implementation Documents; and

(iii) the Information Agent and its respective directors, managers, officers or other duly appointed representatives has each lawfully done or caused to be done or purported to be done, in each case to the extent in compliance with this Restructuring Plan or the Implementation Documents,

in each case on or prior to the Restructuring Effective Date; and

(b)    each CoreCo Plan Creditor hereby irrevocably undertakes to the Plan Parties to treat all CoreCo Plan Claims and the (direct and indirect) rights and obligations of each CoreCo Plan Creditor under the Debt Documents as having been effectively varied and/or released in the manner envisaged by this Restructuring Plan, the Transaction Implementation Deed and the Implementation Documents.

### 9.2    Costs

9.2.1    The Plan Company or another Group Company will pay in full all costs, charges, expenses, and disbursements incurred by it in connection with the negotiation, preparation, and implementation of this Restructuring Plan as and when they arise, including, but not limited to, the costs of holding the Plan Meetings, the costs of

obtaining the sanction of the Court and the costs of placing notices (if any) required by this Restructuring Plan.

**9.3     Record Date**

**9.3.1**   For the purposes of calculating entitlements to receive Plan Consideration, all CoreCo Plan Claims shall be determined by the Plan Company, acting on information provided by the Information Agent, in accordance with the methodology set out in the Transaction Implementation Deed, as at the Record Date.

**9.4     Assignments or transfers**

**9.4.1**   The Plan Company shall be under no obligation to recognise any assignment or transfer of rights, benefits or interests in the Debt Documents after the Record Date for the purposes of calculating entitlements to receive Plan Consideration under this Restructuring Plan and has no obligations hereunder to any person other than the CoreCo Plan Creditors on the Record Date, provided that, where the Plan Company has received from the relevant parties notice in writing of such assignment or transfer prior to the Restructuring Effective Date, the Plan Company may, in its sole discretion and subject to the production of such other evidence in relation to such assignment or transfer as it may reasonably require and to any other terms and conditions which the Plan Company may consider necessary or desirable, acting reasonably, agree to recognise such assignment or transfer for the purposes of calculating entitlements to receive Plan Consideration under this Restructuring Plan.

**9.4.2**   Any assignee or transferee of the interests in the Debt Documents recognised by the Plan Company pursuant to this Clause 9.4 shall be bound by the terms of the Restructuring Plan as a CoreCo Plan Creditor and shall produce such evidence as the Plan Company may reasonably require to confirm that it has agreed to be bound by the terms of this Restructuring Plan.

**9.5     Obligations on days other than a Business Day**

**9.5.1**   If any obligation is to be performed under the terms of the Restructuring Plan on a date other than a Business Day, the relevant obligation shall be performed on the next Business Day.

**9.6     Exercise of discretion**

**9.6.1**   Where, under or pursuant to any provision of this Restructuring Plan, a matter is to be determined by the Plan Company, it will be determined by the directors of the Plan Company in their discretion in such manner as they may consider fair and reasonable.

**9.7     Severability**

**9.7.1**   If at any time any provision of this Restructuring Plan is or becomes illegal, invalid or unenforceable in any respect under the law of any jurisdiction, such provision shall be severed from the Restructuring Plan for the purposes of that jurisdiction, and neither the legality, validity or enforceability of that provision under the law of any other jurisdiction nor the legality, validity or enforceability of any other

provision of this Restructuring Plan under the law of that or any other jurisdiction will in any way be affected or impaired thereby, and the rest of the Restructuring Plan shall continue in full force and effect in that jurisdiction as if the severed provision had not been included.

**9.8   CoreCo Plan Creditors' obligations**

9.8.1   The obligations of each CoreCo Plan Creditor under this Restructuring Plan are several.

**9.9   Conflict**

9.9.1   In the case of any conflict or inconsistency between the terms of this Restructuring Plan and the terms of the Explanatory Statement, the terms of this Restructuring Plan will prevail.

**10   NOTICE**

10.1   Any notices (including any service of process in connection with a breach of the Restructuring Plan) shall be given in writing and shall be deemed to have been duly given if it is uploaded to the Plan Website *and* delivered by hand, pre-paid first class post, airmail or electronically to the following parties:

(a)   if to the Plan Company, to:

> NFE Global Holdings Limited
> Suite 1, 7th Floor 50 Broadway
> London SW1H 0BL
> United Kingdom
> Email: NFEGlobalUK@newfortressenergy.com
> Attention: Office of the General Counsel

with copies (which shall not constitute notice) to:

> Skadden, Arps, Slate, Meagher & Flom (UK) LLP
> 22 Bishopsgate
> London EC2N 4BQ
> United Kingdom
> Email: Peter.Newman@Skadden.com;
> Christopher.Dressel@skadden.com; and DLPLady@Skadden.com
> Attention: Peter Newman; Christopher Dressel

(b)   if to a CoreCo Plan Creditor, to its last known address, fax number or email address stated in the Plan Creditor Letter or failing that according to the Notice Records, and:

(i)   if to any member of the Akin/Evercore AHG, with copies (which shall not constitute notice) to:

28

Akin Gump Strauss Hauer & Feld LLP
One Bryant Park
New York, New York 10036
Attention: Michael Stamer
Email: mstamer@akingump.com

and

Akin Gump Strauss Hauer & Feld LLP
2001 K Street, NW
Washington, DC 20006
Attention: James Savin; Iain Wood
Email: jsavin@akingump.com; iwood@akingump.com

(ii) if to any member of the Legacy Notes AHG, with copies (which shall not constitute notice) to:

Paul Hastings LLP
200 Park Avenue
New York, NY  10166
Attention: Sayan Bhattacharyya; Matthew Friedrick; Amrit Khosa
Email: sayanbhattacharyya@paulhastings.com; matthewfriedrick@paulhastings.com; amritkhosa@paulhastings.com

(iii) if to any Supporting Creditor that is a holder of Revolving Credit Facility Debt, with copies (which shall not constitute notice) to:

Sidley Austin LLP
1000 Louisiana Street
Suite 5900
Houston, TX 77002
Attention: Duston K. McFaul; Brian E. Minyard; Maegan Quejada
Email: dmcfaul@sidley.com; bminyard@sidley.com; mquejada@sidley.com; NFEProjectTemplarSidleyTeam@sidley.com

and

Sidley Austin LLP
One South Dearborn
Chicago, IL 60603
Attention: Matthew A. Clemente
Email: mclemente@sidley.com

(iv) if to the Series I Lender or Series II Lender, to:

NFE Brazil Investments LLC / NFE Financing LLC
C/o New Fortress Energy Inc.
111 W. 19th Street, 8th Floor
New York, NY 10011
Attention: Office of the General Counsel
Telephone: 516-268-7406
Email: legal@newfortressenergy.com

29

with copies (which shall not constitute notice) to:
Paul, Weiss, Rifkind, Wharton & Garrison LLP
1285 Avenue of the Americas
New York, New York 10019
Attention: Andrew Rosenberg; Sung Pak; Kyle R. Satterfield
Email: arosenberg@paulweiss.com; spak@paulweiss.com;
ksatterfield@paulweiss.com

   (c)  if to the Information Agent, to:

Kroll Issuer Services Limited
The News Building 3 London Bridge Street
London SE1 9SG
United Kingdom
Attention: Ivan Santek/ Alessandro Zorza
E-mail: nfe@is.kroll.com
Phone: +44 20 7089 0909
Plan Website: https://deals.is.kroll.com/nfe

**10.2**   CoreCo Plan Creditors and any Administrative Party shall have the right to request a paper copy of any Notice by contacting the Information Agent. The Information Agent shall send such requested documents by first class post in respect of CoreCo Plan Creditors whose address is in the UK and by "international standard post" in respect of CoreCo Plan Creditors whose address is outside the UK.

**10.3**   Any Notice shall be deemed to have been delivered and served:

   (a)  if by way of e-mail:

      (i)  subject to Clause 10.3(a)(ii), when sent; and

      (ii)  if one or more E-Mail Error Messages are sent from and with respect to a person's e-mail address for the purposes of Notices within one hour of such e-mail being sent, the e-mail shall not be deemed to be delivered and effective unless the intended recipient confirms receipt (but failure of an e-mail to be deemed delivered and effective shall not affect other or subsequent e-mails, or delivery of a communication or document pursuant to another method permitted under this Clause 10);

   (b)  if by way of letter, five Business Days after being deposited in the post postage prepaid in an envelope and addressed correctly;

   (c)  if delivered by hand or courier, on the first Business Day following delivery; and

   (d)  if by way of upload to the Plan Website, when viewable on the Plan Website (written notice of which shall be distributed by the Plan Company to each Plan Party); and, if a particular department or officer is specified as part of the address details provided under this Clause 10, if addressed to that department or officer (other than with respect to Clause 10.3(d)).

**10.4**     In proving service, it shall be sufficient proof, in the case of a Notice sent by post, that the envelope was properly stamped, addressed and placed in the post.

**10.5**     The accidental omission to send any Notice, written communication or other document in accordance with this Clause 10, or the non-receipt of any such Notice by any CoreCo Plan Creditor, shall not affect the provisions of the Restructuring Plan or their effectiveness.

## 11      PLAN PARTIES

**11.1**     Each Plan Party and each Nominee as applicable shall enjoy the benefit and be entitled to enforce the terms of this Restructuring Plan.

**11.2**     Except as provided in this Restructuring Plan, no rights are conferred on any person under the Contracts (Rights of Third Parties) Act 1999 to enforce the terms of this Restructuring Plan.

## 12      GOVERNING LAW AND JURISDICTION

**12.1**     **Subject to Clause 12.2**:

    **12.1.1**  the Restructuring Plan and any non-contractual obligations arising out of or in connection with the Restructuring Plan shall be governed by, and construed in accordance with, the laws of England and Wales; and

    **12.1.2**  the CoreCo Plan Creditors hereby agree that the Court shall have exclusive jurisdiction to hear and determine any suit, action or proceeding and to settle any dispute which may arise out of or in connection with the Restructuring Plan, or out of any action taken or omitted to be taken under the Restructuring Plan or any non-contractual obligations arising out of or in connection with the Restructuring Plan. For such purposes the CoreCo Plan Creditors irrevocably submit to the jurisdiction of the Court.

**12.2**     Nothing in this Clause 12 shall:

    **12.2.1**  affect the validity of other provisions of the Implementation Documents (from and after the date such documents become effective) determining governing law and jurisdiction as between the Plan Company and the CoreCo Plan Creditors, whether contained in any contract or otherwise; or

    **12.2.2**  prevent the Plan Company from relying upon the provisions of this Restructuring Plan in any foreign court or in any foreign proceedings.

**12.3**     The Restructuring Plan shall take effect subject to any prohibition or condition imposed by applicable law.

*[The remainder of this page is intentionally left blank]*

31

**Schedule 1 – Undertaking Parties**

Entities accompanied by an asterisk are planned to be dissolved within 30 or 60 days following the Restructuring Effective Date. In order to comply with that timeframe, the dissolution of certain of these entities may be commenced or completed prior to the sanction hearing in relation to the Plans. To the extent this occurs, an updated list will be filed with the court in advance of the sanction hearing with any such entities flagged.

1.      Amaunet, S. de R.L. de C.V.

2.      American Energy Logistics Solutions LLC *

3.      Atlantic Energy Holdings LLC

4.      Atlantic Pipeline Holdings SRL *

5.      Bradford County Development Holdings LLC *

6.      Bradford County GPF Holdings LLC *

7.      Bradford County GPF Partners LLC *

8.      Bradford County Power Holdings LLC *

9.      Bradford County Power Partners LLC *

10.     Bradford County Real Estate Partners LLC

11.     Bradford County Transport Holdings LLC *

12.     Bradford County Transport Partners LLC *

13.     Encanto East LLC *

14.     Encanto Power West LLC *

15.     Encanto West LLC *

16.     Island LNG LLC *

17.     LA Development Holdings LLC *

18.     LA Real Estate Holdings LLC *

19.     LA Real Estate Partners LLC

20.     LNG Holdings LLC *

21.     Mexico FLNG Onshore S. de R.L. de C.V.

22.     New Fortress Energy Holdings LLC

23.     New Fortress Energy Inc.

32

24. New Fortress Energy Marketing LLC

25. New Fortress Intermediate LLC

26. NFE Altamira Onshore S. de R.L. de C.V.

27. NFE Andromeda Chartering LLC

28. NFE Angola Holdings LLC *

29. NFE Atlantic Holdings LLC

30. NFE BCS Holdings (A) LLC

31. NFE BCS Holdings (B) LLC

32. NFE BCS Mexico Holdings, S. de R.L. de C.V.

33. NFE Bermuda Holdings Limited

34. NFE Brazil Newco Limited

35. NFE Equipment Holdings LLC *

36. NFE Equipment Partners LLC

37. NFE Financing LLC

38. NFE FLNG 1 Issuer LLC

39. NFE FLNG 2 LLC

40. NFE Ghana Holdings LLC *

41. NFE Ghana Partners LLC *

42. NFE Global Holdings Limited

43. NFE Global Shipping LLC *

44. NFE GP LLC

45. NFE Grand Shipping LLC

46. NFE Honduras Holdings LLC *

47. NFE International Holdings

48. NFE International Holdings 1 Limited

49. NFE International Holdings 2 Limited

50. NFE International Holdings Limited

51. NFE International LLC

52. NFE International Shipping LLC

53. NFE ISO Holdings LLC *

54. NFE ISO Partners LLC

55. NFE Jamaica GP LLC *

56. NFE Logistics Holdings LLC *

57. NFE Management LLC

58. NFE Mexico Holdings Parent S. à R.L.

59. NFE Mexico Holdings S. à R.L.

60. NFE Mexico Power Holdings Limited

61. NFE Mexico Terminal Holdings Limited

62. NFE Nicaragua Development Partners LLC

63. NFE Nicaragua Development Partners LLC, Sucursal Nicaragua

64. NFE Nicaragua Holdings LLC

65. NFE North Trading LLC

66. NFE Pacifico LAP, S. de R.L. de C.V.

67. NFE Pioneer 1 LLC

68. NFE Pioneer 2 LLC

69. NFE Pioneer 3 LLC

70. NFE Plant Development Holdings LLC *

71. NFE Power PR LLC

72. NFE Shannon Holdings Limited

73. NFE South Power Holdings LLC

74. NFE South Power Trading Limited

75. NFE Sub LLC

76. NFE Transport Holdings LLC *

77. NFE Transport Partners LLC

78. NFE UK Holdings Limited

79. NFE US Holdings LLC

34

80.   Nfenergia GN de BCS, S. de R.L. de C.V.

81.   NFENERGÍA LLC

82.   Nfenergia Mexico, S. de R.L. de C.V.

83.   PA Development Holdings LLC *

84.   PA Real Estate Holdings LLC *

85.   PA Real Estate Partners LLC *

86.   Soluciones de Energia Limpia PR LLC

87.   Tico Development Partners Holdings LLC *

88.   Tico Development Partners LLC *

89.   NFE Brazil Funding LP *

90.   NFE Brazil Funding LLC *

91.   Hygo Energy Transition Ltd.

92.   NFE Brazil Financing Limited

93.   LNG Power Limited (UK)

94.   NFE Power Brasil Participações S.A.

95.   NFE Power Latam Participações e Comércio Ltda.

96.   CELBA – Centrais Elétricas Barcarena S.A.

97.   Barcarena Offshore Capital LLC

98.   NFE Power SSLNG Participações Ltda.

99.   NFE Power Distribuidora de Gás Natural Ltda.

100.   NFE Brazil Holdings Limited

101.   NFE Brazil Holdings LLC

102.   Shannon LNG Energy Limited

103.   Shannon LNG Limited

104.   NFE Brazil Investments LLC

105.   U.S. Bank Trust Company, National Association as 2026 Legacy Notes Trustee, 2029 Legacy Notes Trustee and Initial Common Representative

106. Wilmington Savings Fund Society, FSB as 2029 New Notes Trustee, Series I Agent, Series II Agent, and Brazil Parent Intercompany Agent

107. MUFG Bank, Ltd as RCF Agent and Second Additional Common Representative

108. Wilmington Trust, National Association, as TLA Agent, TLB Agent, First Equal Priority Agent, Second Equal Priority Agent, New CoreCo Term Loan Facility Agent and FLNG 2 Term Loan Agent

109. Natixis, New York Branch as New Common Representative

110. Kroll Issuer Services Limited as Holding Period Trustee and Information Agent.

**IN THE HIGH COURT OF JUSTICE**
**BUSINESS AND PROPERTY COURTS OF**
**ENGLAND AND WALES**
**INSOLVENCY AND COMPANIES LIST (ChD)**

**IN THE MATTER OF NFE BRAZIL NEWCO LIMITED**

**-and-**

**IN THE MATTER OF THE COMPANIES ACT 2006**

---

**RESTRUCTURING PLAN**
(under Part 26A of the Companies Act 2006)

- between –

NFE BRAZIL NEWCO LIMITED

- and –

THE BRAZILCO PLAN CREDITORS
(as defined herein)

---

**Table of Contents**

1      Definitions and Interpretation..................................................................................2

2      Application and Effectiveness of the Restructuring Plan................................................15

3      Grant of Authority to Execute the Implementation Documents......................................16

4      Deeds of Undertaking.............................................................................................20

5      Closing Steps and Plan Consideration......................................................................20

6      Modifications of this Restructuring Plan...................................................................22

7      Releases.............................................................................................................23

8      Termination.........................................................................................................24

9      General Restructuring Plan Provisions......................................................................25

10     Notice...............................................................................................................27

11     Plan Parties........................................................................................................29

12     Governing Law and Jurisdiction..............................................................................29

Schedule 1 – Undertaking Parties..................................................................................30

# RESTRUCTURING PLAN

**Between:**

(1) **NFE BRAZIL NEWCO LIMITED**, a company incorporated under the laws of England and Wales (company number 17141053) (the "**Plan Company**"); and

(2) **THE BRAZILCO PLAN CREDITORS** (as hereinafter defined).

**Recitals**

(A)     The Plan Company was incorporated and registered in England and Wales on April 2026, with registered number 17141053, as a private company limited by shares under the Act (as defined below). The Plan Company's registered office is at Suite 1, 7th Floor, 50 Broadway, London, United Kingdom, SW1H 0DB. The Plan Company is an indirect subsidiary of NFE Inc. (as defined below).

(B)     The purpose of this Restructuring Plan (as defined below) is to effect a compromise and arrangement between the Plan Company and the BrazilCo Plan Creditors (as defined below) to facilitate the implementation of the Restructuring (as defined below). The BrazilCo Plan Creditors are the 2029 New Noteholders (as defined below).

(C)     To effect such compromise and arrangement, each BrazilCo Plan Creditor will pursuant to the terms of this Restructuring Plan, grant a power of attorney to the Plan Company to execute the Transaction Implementation Deed and the applicable Implementation Documents to which such BrazilCo Plan Creditor is a party on its behalf (each as defined below).

(D)     In order to successfully implement the Restructuring, participation is required from, among others, the Undertaking Parties. Each of the Undertaking Parties has severally agreed, upon the sanctioning of this Restructuring Plan by the Court (as defined below), to be bound by and comply with the obligations expressed to apply to it under this Restructuring Plan and, on and from their release in accordance with the Restructuring Plan, the Implementation Documents to which it is a party pursuant to the provisions of such person's Deed of Undertaking (as defined below).

(E)     This Restructuring Plan and the CoreCo Plan (as defined below) are inter-conditional such that this Restructuring Plan and the CoreCo Plan shall become effective and legally binding at the same time (or not at all).

# 1    DEFINITIONS AND INTERPRETATION

## 1.1    Definitions

1.1.1    In this Restructuring Plan, the following terms shall, unless the context otherwise requires, have the following meanings:

"**2026 Legacy Noteholders**" means the ultimate beneficial holders of the 2026 Legacy Notes Debt;

"**2026 Legacy Notes**" means the 6.500% senior secured notes due 2026 issued by NFE Inc. pursuant to the 2026 Legacy Notes Indenture;

"**2026 Legacy Notes Debt**" means all present and future moneys, debts and liabilities due, owing or incurred from time to time by any member of the Group to the 2026 Legacy Noteholders under or in connection with the 2026 Legacy Notes (in each case, whether alone or jointly, or jointly and severally, with any other person, whether actually or contingently, and whether as principal, surety or otherwise);

"**2026 Legacy Notes Indenture**" means the indenture entered into by, among others, NFE Inc. as issuer and U.S. Bank Trust Company, National Association, as trustee and collateral agent, on 12 April 2021 (as amended, supplemented or otherwise modified from time to time);

"**2029 Legacy Noteholders**" means the ultimate beneficial holders of the 2029 Legacy Notes Debt;

"**2029 Legacy Notes**" means the 8.750% senior secured notes due 2029 issued by NFE Inc. pursuant to the 2029 Legacy Notes Indenture;

"**2029 Legacy Notes Debt**" means all present and future moneys, debts and liabilities due, owing or incurred from time to time by any member of the Group to the 2029 Legacy Noteholders under or in connection with the 2029 Legacy Notes (in each case, whether alone or jointly, or jointly and severally, with any other person, whether actually or contingently, and whether as principal, surety or otherwise);

"**2029 Legacy Notes Indenture**" means the indenture entered into by, among others, NFE Inc. as issuer and U.S. Bank Trust Company, National Association, as trustee and collateral agent, on 8 March 2024 (as amended, supplemented or otherwise modified from time to time);

"**2029 New Noteholders**" means the ultimate beneficial holders of the 2029 New Notes Debt;

"**2029 New Notes**" means the 12.000% senior secured notes due 2029 issued by NFE Financing pursuant to the 2029 New Notes Indenture;

"**2029 New Notes Debt**" means all present and future moneys, debts and liabilities due, owing or incurred from time to time by any member of the Group to the holders of the 2029 New Notes under or in connection with the 2029 New Notes (in each

case, whether alone or jointly, or jointly and severally, with any other person, whether actually or contingently, and whether as principal, surety or otherwise);

"**2029 New Notes Indenture**" means the indenture entered into by, among others, NFE Financing, as issuer and Wilmington Savings Fund Society, FSB, as trustee and collateral agent, on 22 November 2024 (as amended, supplemented or otherwise modified from time to time);

"**2029 New Notes Trustee**" means Wilmington Savings Fund Society, FSB in its capacity as trustee and the collateral agent in respect of the 2029 New Notes;

"**2029 New Notes Trustee Advisors**" means Winston & Strawn LLP, and Taylor Wessing LLP, in each case as counsel to the 2029 New Notes Trustee;

"**Act**" means the Companies Act 2006 (as amended from time to time);

"**Ad Hoc Groups**" means, collectively, the Akin/Evercore AHG, the PW/PWP AHG and the Legacy Notes AHG;

"**Administrative Party**" has the meaning given to it in the Transaction Implementation Deed;

"**Advisor Released Person**" means each of the current and former respective officers, directors, employees, executives, attorneys and agents (or equivalents) of each Released Advisor and each Affiliate of each Released Advisor;

"**Advisors**" means, collectively, the Akin/Evercore AHG Advisors, the PW/PWP AHG Advisors, the RCF Advisors, the TLA Advisors, the TLB Advisors, the Legacy Notes Advisors, the Legacy Notes Trustee Advisors, 2029 New Notes Trustee Advisors, the RCF Agent, the TLB Agent, the TLA Agent, the New CoreCo Term Loan Facility Agent, the FLNG 2 Term Loan Agent, the Legacy Notes Trustee, the 2029 New Notes Trustee, and any additional advisors or consultants engaged by any of the Ad Hoc Groups and (in each case) any successor professional advisors to each of the foregoing, in each case as advisors in connection with the Restructuring;

"**Affiliate**" means, with respect to a person, any other person who, directly or indirectly, is in control of, or controlled by, or is under common control with, such person and, for the purposes of this definition, "control" shall mean the power, direct or indirect, to (a) vote on more than 50 per cent. of the securities having ordinary voting power for the election of directors of such person, or (b) direct or cause the direction of the management and policies of such person whether by contract or otherwise;

"**Agreed Form**" means:

(a)    in respect of documents appended to the Explanatory Statement, the form so appended to the Explanatory Statement or as otherwise amended pursuant to (and in accordance with) this Restructuring Plan or the Transaction Implementation Deed;

(b)    in respect of any other Implementation Document, in the form agreed between the Plan Company and the Majority Plan Creditors; or

3

(c)      in respect of any document which is not an Implementation Document or otherwise appended to the Explanatory Statement but which is required herein or in the Transaction Implementation Deed to be in the Agreed Form, in the form agreed between the Plan Companies and the Majority Plan Creditors,

provided that, notwithstanding any provision of this definition of Agreed Form, any documents that are to be agreed between a Company Party and one or more Ad Hoc Groups or other creditor groups pursuant to the Restructuring Support Agreement shall be deemed to be in "Agreed Form" if such documents are in form and substance acceptable to such specified parties only, and, to the extent any Administrative Party is party to a document as administrative agent, in form and substance satisfactory to such Administrative Party;

"**Akin/Evercore AHG**" means the ad hoc group of certain unaffiliated holders of Term Loan B Debt represented by the Akin/Evercore AHG Advisors;

"**Akin/Evercore AHG Advisors**" means, collectively, Akin Gump Strauss Hauer & Feld LLP and Evercore Group L.L.C., and their Affiliates as counsel and financial advisor, respectively, to the Akin/Evercore AHG, as well as other regulatory, local, foreign, barristers and special counsel (in each case as notified to the Plan Company), in their respective capacities as counsel to the Akin/Evercore AHG;

"**Brazil Parent**" means NFE Brazil Investments LLC;

"**BrazilCo Plan Claims**" means any (direct or indirect) claim of a BrazilCo Plan Creditor in respect of any Liability of the Plan Company or any other Group Company, whether as principal obligor, guarantor, indemnifier or security provider, in relation to, or arising out of or in connection with, the Debt Documents or the BrazilCo Plan Debt, arising on or before the Restructuring Effective Date, but excluding any claim of a BrazilCo Plan Creditor in respect of any Liability of the Plan Company or any other Group Company to any BrazilCo Plan Creditor arising directly or indirectly in relation to, or arising out of or in connection with, a failure to comply with the terms of this Restructuring Plan, the Transaction Implementation Deed or any other Implementation Document;

"**BrazilCo Plan Creditors**" means the 2029 New Noteholders;

"**BrazilCo Plan Debt**" means the 2029 New Notes Debt;

"**Business Day**" means a day other than a Saturday, Sunday, or other day on which commercial banks are authorised to close under the laws of, or are in fact closed in, the State of New York, United States of America or in London, United Kingdom;

"**Closing Steps**" has the meaning given to it in Clause 5.1.2;

"**Company Party**" has the meaning given to it in the Transaction Implementation Deed;

"**CoreCo Plan**" means the restructuring plan proposed by NFE Global in substantially the form attached to the Explanatory Statement (or appended to any supplemental explanatory statements made available to the BrazilCo Plan Creditors

4

prior to the Plan Meetings) or with, or subject to, any modification, addition or condition which the Court may think fit to approve or impose, as appropriate;

"**CoreCo Plan Creditors**" means each of the 2026 Legacy Noteholders; the 2029 Legacy Noteholders; the RCF Lenders; the TLB Lenders; the TLA Lenders; the Series I Lender; and the Series II Lender;

"**Court**" means the High Court of Justice of England and Wales and any appellate court in England and Wales having jurisdiction in connection with the Restructuring (including the Court of Appeal and the Supreme Court);

"**Debt Documents**"  means the 2029 New Notes Indenture, the Finance Documents (as defined in or the equivalent of in the 2029 New Notes Indenture) and any related security and ancillary documents;

"**Deed of Undertaking**" means a deed of undertaking to the Plan Company in the form agreed by the parties thereto pursuant to which each of the parties thereto agrees to execute or procure to be executed all such documents, and to do or procure to be done all such acts and things as may be reasonably necessary or desirable to be done by it to implement the Restructuring as described in this Restructuring Plan and to be bound by and perform the terms of this Restructuring Plan and the Transaction Implementation Deed;

"**E-Mail Error Message**" means, with respect to an e-mail sent by one person to another under or in connection with this Restructuring Plan, an automatic error message received from an intended recipient (or the server by which such intended recipient is provided e-mail service) that:

(a)      such e-mail is undeliverable; or

(b)      there has been a failure to deliver such e-mail;

"**English Company Counsel**" means Daniel Bayfield KC, Ryan Perkins and Jon Colclough of South Square Chambers, instructed by the Group Legal Advisor to appear on behalf of the Plan Company before the Court in respect of the Restructuring Plan, or such other barrister as may be instructed by the Group Legal Advisor;

"**Excluded Liabilities**" means:

(a)      any Liability arising from criminal acts, fraud, gross negligence or wilful misconduct on the part of a Released Party, as determined by a judgment issued by a court of competent jurisdiction;

(b)      any Liability of any Released Advisor to its client arising under a duty of care which has been expressly assumed or acknowledged in writing by the relevant Advisor or which can only be excluded in accordance with applicable law and has not been so excluded, or which cannot be released, waived or excluded under applicable law;

(c)      any Liability of any accounting, restructuring or tax advisor of the Plan Company or any other member of the Group to the Released Parties or any other member of the Group and subject to the terms of any reliance letter,

5

in relation to any report, memorandum or opinion provided by such advisor on which a Released Party is expressly entitled to rely pursuant to an executed reliance letter;

(d)     any Liability of the Plan Company or any other member of the Group with respect to any outstanding fees, costs and/or expenses properly incurred by any party's professional advisors (including the Advisors) in accordance with the terms of any such advisors' fee letters, engagement letters or other form of written agreement entered into by any member of the Group in connection with the Restructuring;

(e)     any Liabilities created by the Implementation Documents, the Restructuring Plan or any ancillary document thereto, including as a result of a failure by any party to comply with such documents;

(f)     in the case of a Group Company: (i) any Liability of any director of such Group Company that would otherwise attach to that director in connection with any negligence, default, breach of duty or breach of trust, or that would be available upon the insolvency of such Group Company; and (ii) any Liability of a Group Advisor (solely in its capacity as advisor to such Group Company) that would otherwise attach to such Group Advisor in connection with any negligence, default, breach of duty or breach of trust, or that would be available upon the insolvency of such Group Company; and

(g)     any Liability of one Group Company to another Group Company that is expressly not released under the terms of the Separation Agreement or any other Implementation Document, which in each case, shall be solely governed by the terms and conditions thereunder;

"**Existing Obligor**" means each obligor under the Debt Documents from time to time;

"**Explanatory Statement**" means the explanatory statement dated 15 May 2026 relating to and issued by the Plan Company and NFE Global in connection with this Restructuring Plan and the CoreCo Plan pursuant to section 901D of the Act;

"**Group**" means NFE Inc. and its Subsidiaries (including the Plan Company) from time to time, with each being a "**Group Company**";

"**Group Advisor**" means:

(a)     the Group Legal Advisor;

(b)     English Company Counsel;

(c)     Houlihan Lokey Capital, Inc. and Alvarez & Marsal Europe LLP, as financial advisors to the Plan Company and the Group;

(d)     any local or specialist counsel engaged by any of the foregoing; and

(e)     any successors to the foregoing;

"**Group Legal Advisor**" means Skadden, Arps, Slate, Meagher & Flom LLP and its affiliates, as legal counsel to the Group, or any successor legal counsel to the Group, in respect of the Plans;

"**Holding Period Trust**" has the meaning given to it in the Holding Period Trust Deed;

"**Holding Period Trust Deed**" has the meaning given to it in the Transaction Implementation Deed;

"**Implementation Documents**" has the meaning given to it in the Transaction Implementation Deed;

"**Indebtedness**" has the meaning given to it in the Transaction Implementation Deed;

"**Information Agent**" means Kroll Issuer Services Limited in its capacity as information agent in connection with the Plans (and any successor information agent);

"**Legacy Notes**" means the 2026 Legacy Notes and the 2029 Legacy Notes.

"**Legacy Notes Advisors**" means Paul Hastings LLP and Paul Hastings (Europe) LLP, as counsel to the Legacy Notes AHG;

"**Legacy Notes AHG**" means the ad hoc group of certain unaffiliated holders of Legacy Notes represented by Paul Hastings LLP and Paul Hastings (Europe) LLP as counsel;

"**Legacy Notes Trustee**" means U.S. Bank Trust Company, National Association in its capacity as trustee and the collateral agent in respect of the 2026 Legacy Notes and the 2029 Legacy Notes;

"**Legacy Notes Trustee Advisors**" means Greenberg Traurig, LLP, and Thompson Hine LLP, in each case as counsel to the Legacy Notes Trustee;

"**Liability**" means any present or future payment and discharge obligation, liability, claim, debt, claims for specific performance, damages or restitution, counterclaims, suits, rights of action, or rights whatsoever or howsoever arising, including, without limitation, for the payment of money or the performance of an act or obligation (whether deliberate or otherwise) or any failure to perform any obligation or any omission, whether for negligence, breach of duty, breach of trust or misrepresentation or otherwise, whether in respect of principal, interest or otherwise, whether actual or contingent, whether fixed or undetermined, whether admitted or disputed, whether known or unknown, whether owed jointly or severally and whether owed as principal, surety or in any capacity whatsoever and whether it arises at common law, in equity or by statute, in England and Wales or in any other jurisdiction under whatever applicable law, under any legal theory, and in any manner whatsoever, and "**Liabilities**" shall be construed accordingly;

"**Majority Akin/Evercore AHG Members**" means, as of any relevant time, members of the Akin/Evercore AHG that are Supporting Creditors holding, in the aggregate, greater than 50.0% of the aggregate outstanding principal amount of

7

Term Loan B Debt then held by the members of the Akin/Evercore AHG that are Supporting Creditors;

"**Majority Legacy Notes Supporting Creditors**" means, as of any relevant time, members of the Legacy Notes AHG that are Supporting Creditors holding, in the aggregate, greater than 50.0% of the aggregate outstanding principal amount of the Legacy Notes then held by the members of the Legacy Notes AHG that are Supporting Creditors;

"**Majority Plan Creditors**" means, collectively, as of any relevant time, (i) the Majority Akin/Evercore AHG Members, (ii) the Majority PW/PWP AHG Members, (iii) the Majority RCF Supporting Creditors, (iv) solely with respect to any matter that (x) materially and adversely alters (1) the treatment of the 2026 Legacy Notes Debt or the 2029 Legacy Notes Debt, as applicable, under the Restructuring or (2) the rights or obligations of the Supporting Creditors who hold 2026 Legacy Notes Debt or 2029 Legacy Notes Debt, as applicable, under this Restructuring Plan, or (y) disproportionately alters the allocation of consideration to the holders of the 2026 Legacy Notes Debt or the 2029 Legacy Notes Debt as set forth on the Exchange Consideration Chart attached to the Restructuring Term Sheet, whether by decreasing the consideration allocated to holders of 2026 Legacy Notes Debt or the 2029 Legacy Notes Debt or increasing (including in the form of additional fees) the consideration allocated to holders of other Indebtedness, the Majority Legacy Notes Supporting Creditors and (v) solely with respect to any matter that (x) materially and adversely alters (1) the treatment of the Term Loan A Debt under the Restructuring or (2) the rights or obligations of the holders of Supporting Term Loan A Debt under this Restructuring Plan, or (y) disproportionately alters the allocation of consideration to the holders of the Term Loan A Debt as set forth on the Exchange Consideration Chart attached to the Restructuring Term Sheet, whether by decreasing the consideration allocated to holders of Term Loan A Debt or increasing (including in the form of additional fees) the consideration allocated to holders of other Indebtedness, the Majority TLA Supporting Creditors;

"**Majority Plan Creditors' Advisors**" means the Akin/Evercore AHG Advisors, the PW/PWP AHG Advisors and the RCF Advisors on behalf of, respectively, the Majority Akin/Evercore AHG Members, the Majority PW/PWP AHG Members and the Majority RCF Supporting Creditors and, to the extent required, the TLA Advisors on behalf of the Majority TLA Supporting Creditors and the Legacy Notes Advisors on behalf of the Majority Legacy Notes Supporting Creditors;

"**Majority PW/PWP AHG Members**" means, as of any relevant time, members of the PW/PWP AHG that are Supporting Creditors holding, in the aggregate, greater than 50.0% of the aggregate outstanding principal amount of 2029 New Notes Debt then held by the members of the PW/PWP AHG that are Supporting Creditors;

"**Majority RCF Supporting Creditors**" means, as of any relevant time, holders of Revolving Credit Facility Debt that are Supporting Creditors holding, in the aggregate, greater than 50.0% of the aggregate outstanding principal amount of Revolving Credit Facility Debt then held by holders of Revolving Credit Facility Debt that are Supporting Creditors;

8

"**Majority TLA Supporting Creditors**" means, as of any relevant time, holders of Term Loan A Debt that are Supporting Creditors holding, in the aggregate, greater than 50.0% of the aggregate outstanding principal amount of Term Loan A Debt then held by such holders of Term Loan A Debt that are Supporting Creditors;

"**NFE Financing**" means NFE Financing LLC, a Delaware limited liability company;

"**NFE Global**" means NFE Global Holdings Limited, an English private company limited by shares;

"**NFE Inc.**" means New Fortress Energy Inc., a Delaware corporation;

"**Notice**" means any notice or other written communication to be given under or in relation to the Restructuring Plan;

"**Notice Records**" means the names and addresses (including email addresses) contained in the Plan Company's records for a BrazilCo Plan Creditor at 5:00 p.m. (London time) two Business Days before the date of a relevant Notice;

"**Plan Company**" has the meaning given to it in the Parties section.

"**Plan Consideration**" means the consideration to be received by each BrazilCo Plan Creditor pursuant to this Restructuring Plan and in accordance with the Transaction Implementation Deed;

"**Plan Creditor Letter**" means a plan creditor letter, to be submitted online via the Plan Website to the Information Agent, in the form appended to the Explanatory Statement with such minor or technical amendments as the Court may approve;

"**Plan Creditors**" means, collectively, the BrazilCo Plan Creditors and the CoreCo Plan Creditors;

"**Plan Effective Date**" has the meaning given to that term in Clause 2.2;

"**Plan Meeting**" means a meeting of a class of BrazilCo Plan Creditors convened in accordance with the permission of the Court pursuant to section 901C of the Act to consider and, if thought fit, approve this Restructuring Plan, including any adjournment thereof;

"**Plan Party**" or "**Party**" means the Plan Company, each BrazilCo Plan Creditor and each Undertaking Party, and "**Plan Parties**" and "**Parties**" shall be construed accordingly;

"**Plan Sanction Order**" means the order or orders of the Court sanctioning the Restructuring Plan;

"**Plan Website**" means the website at https://deals.is.kroll.com/nfe;

"**Plans**" means, collectively, this Restructuring Plan and the CoreCo Plan;

"**Proceedings**" means any process, action or other legal proceedings (including, without limitation, any demand, arbitration, alternative dispute resolution, judicial review, adjudication, execution, seizure, distraint, forfeiture, re-entry lien,

9

enforcement of judgment or enforcement of any security), whether arising in connection with the Restructuring or otherwise;

"**PW/PWP AHG**" means the ad hoc group of certain unaffiliated 2029 New Noteholders represented by the PW/PWP AHG Advisors;

"**PW/PWP AHG Advisors**" means, collectively, Paul, Weiss, Rifkind, Wharton & Garrison LLP and Perella Weinberg Partners LP, as counsel and financial advisor, respectively, to the PW/PWP AHG, as well as other regulatory, tax, local, foreign, barristers (including Stephen Robins KC) and special counsel (in each case as notified to the Plan Company), in their respective capacities as counsel to the PW/PWP AHG;

"**R-1 Revolving Credit Facility**" means the facility drawn at approximately US$100 million as of the date of this Restructuring Plan under the Revolving Credit Facility Agreement;

"**R-1 Revolving Credit Facility Debt**" means all present and future moneys, debts and liabilities due, owing or incurred from time to time by any member of the Group to any agent, any issuing bank, any lender or any lender counterparty of the R-1 Revolving Credit Facility under or in connection with the R-1 Revolving Credit Facility (in each case, whether alone or jointly, or jointly and severally, with any other person, whether actually or contingently, and whether as principal, surety or otherwise);

"**R-2 Revolving Credit Facility**" means the facility drawn at approximately US$560 million as of the date of this Restructuring Plan under the Revolving Credit Facility Agreement;

"**R-2 Revolving Credit Facility Debt**" means all present and future moneys, debts and liabilities due, owing or incurred from time to time by any member of the Group to any agent, any issuing bank, any lender or any lender counterparty of the R-2 Revolving Credit Facility under or in connection with the R-2 Revolving Credit Facility (in each case, whether alone or jointly, or jointly and severally, with any other person, whether actually or contingently, and whether as principal, surety or otherwise);

"**RCF Advisors**" means Sidley Austin LLP, as counsel (together with any external counsel instructed by them in relation to the Restructuring Plan (including Felicity Toube KC and Matthew Abraham of South Square Chambers)) and FTI Consulting, Inc. and Moelis & Company as financial advisors, to the agent under the Revolving Credit Facility Agreement and each of their Affiliates and any other advisors retained by any of the foregoing in connection with the Restructuring in accordance with the Revolving Credit Facility Agreement;

"**RCF Agent**" means MUFG Bank, LTD, in its capacity as the administrative agent and as the collateral agent under the terms of the Revolving Credit Facility Agreement, or any successor thereof;

"**RCF Lenders**" means the lenders of record under the Revolving Credit Facility Agreement;

10

"**Record Date**" means the date on which the BrazilCo Plan Creditors' entitlement to vote on this Restructuring Plan and the value of their BrazilCo Plan Claims will be assessed, being 10 June 2026;

"**Released Advisors**" means:

(a)     the Group Legal Advisor;

(b)     English Company Counsel;

(c)     Houlihan Lokey Capital, Inc. and Alvarez & Marsal Europe LLP, as financial advisors to the Plan Company and the Group;

(d)     the Advisors;

(e)     any local or specialist counsel engaged by any of the foregoing; and

(f)     any successors to the foregoing;

"**Released Parties**" means, each in their various respective capacities as such in connection with the Restructuring and the Restructuring Plan:

(a)     the Plan Company;

(b)     each Group Company;

(c)     each Undertaking Party;

(d)     each Plan Creditor;

(e)     each: (i) Released Advisor; (ii) Advisor Released Person; and (iii) any person acting on the instructions of, or providing services to, any of the foregoing in connection with the Restructuring Plan or the Restructuring;

(f)     each Affiliate of the persons listed at (a) to (e) above; and

(g)     each of the respective officers, directors, employees, partners, executives and agents (or equivalents) of the persons listed in (a) to (f) above (each, a "**Representative**");

"**Restructuring**" has the meaning given to it in the Transaction Implementation Deed;

"**Restructuring Effective Date**" has the meaning given to it in the Transaction Implementation Deed;

"**Restructuring Long-Stop Time**" has the meaning given to it in the Transaction Implementation Deed;

"**Restructuring Plan**" means this restructuring plan proposed by the Plan Company under Part 26A of the Act (including the compromise and arrangement pursuant thereto) in the present form as set out herein or with, or subject to, any modification, addition or condition which the Court may think fit to approve or impose, as appropriate, provided any such modification, addition or condition is

11

approved by the Majority Plan Creditors to the extent required pursuant to Clause 6 (*Modifications of this Restructuring Plan*) herein;

"**Restructuring Support Agreement**" means the Restructuring Support Agreement dated 17 March 2026 originally entered into between, among others, NFE Inc., NFE Global and the Supporting Creditors (as defined therein) and acceded to by the Plan Company on 9 April 2026 and as amended, supplemented and/or restated from time to time;

"**Restructuring Term Sheet**" means the term sheet relating to the Restructuring appended to the Restructuring Support Agreement;

"**Revolving Credit Facility Agreement**" means the Credit Agreement, dated as of 15 April 2021, by and among NFE Inc., the guarantors from time to time party thereto, the lenders and issuing banks from time to time party thereto, and MUFG Bank Ltd., as administrative agent and collateral agent (as amended, supplemented or otherwise modified from time to time);

"**Revolving Credit Facility Debt**" means the R-1 Revolving Credit Facility Debt and the R-2 Revolving Credit Facility Debt;

"**Separation Agreement**" has the meaning given to it in the Transaction Implementation Deed;

"**Series I Lender**" means the lender under the Series I Loan Agreement;

"**Series I Loan**" means the loan made under the Series I Loan Agreement;

"**Series I Loan Agreement**" means the senior secured credit agreement entered into between, among others, the Brazil Parent as lender and NFE Inc. as borrower on 22 November 2024;

"**Series II Lender**" means the lender under the Series II Loan Agreement;

"**Series II Loan**" means the loan made under the Series II Loan Agreement;

"**Series II Loan Agreement**" means the senior secured credit agreement entered into between, among others, NFE Financing as lender and NFE Inc. as borrower on 6 December 2024;

"**Subsidiary**" means, in respect of an entity, any entity in respect of which it has direct or indirect control or owns directly or indirectly more than 50% of the voting rights, voting capital or similar rights of ownership, and "control" for this purpose means the power to direct the management and the policies of the entity whether through the ownership of voting capital, by contract or otherwise;

"**Supporting Creditor**" has the meaning given to it in the Transaction Implementation Deed;

"**Supporting Term Loan A Debt**" has the meaning given to it in the Restructuring Support Agreement;

12

"**Term Loan A**" means the loans and other extensions of credit made under the Term Loan A Agreement;

"**Term Loan A Agreement**" means the credit agreement entered into between, among others, NFE Inc., the TLA Agent and the lenders from time to time party thereto on 19 July 2024, as amended from time to time;

"**Term Loan A Debt**" means all present and future moneys, debts and liabilities due, owing or incurred from time to time by any member of the Group to the lenders of the Term Loan A under or in connection with the Term Loan A Agreement (in each case, whether alone or jointly, or jointly and severally, with any other person, whether actually or contingently, and whether as principal, surety or otherwise);

"**Term Loan B**" means the loans and other extensions of credit made under the Term Loan B Agreement;

"**Term Loan B Agreement**" means the credit agreement entered into between, among others, NFE Inc., the TLB Agent, and the lenders from time to time party thereto on 30 October 2023, as amended from time to time;

"**Term Loan B Debt**" means all present and future moneys, debts and liabilities due, owing or incurred from time to time by any member of the Group to the lenders of the Term Loan B under or in connection with the Term Loan B Agreement (in each case, whether alone or jointly, or jointly and severally, with any other person, whether actually or contingently, and whether as principal, surety or otherwise);

"**TLA Advisors**" means Seward & Kissel LLP, as counsel to the TLA Agent under the Term Loan A Agreement;

"**TLA Agent**" means Wilmington Trust, National Association, in its capacity as administrative agent and collateral agent under the Term Loan A Agreement, or any successor thereof;

"**TLA Lenders**" means the lenders of record under the Term Loan A Agreement;

"**TLB Advisors**" means Seward & Kissel LLP, as counsel to the TLB Agent under the Term Loan B Agreement;

"**TLB Agent**" means Wilmington Trust, National Association, in its capacity as administrative agent and collateral agent under the Term Loan B Agreement, or any successor thereof;

"**TLB Lenders**" means the lenders of record under the Term Loan B Agreement;

"**Transaction Implementation Deed**" means the transaction implementation deed to be entered into on (or around) the Plan Effective Date between, among others, the Plan Company, NFE Global, the BrazilCo Plan Creditors and the creditors of NFE Global subject to the CoreCo Plan, in Agreed Form; and

"**Undertaking Party**" means each of the entities listed in Schedule 1.

13

**1.2     Interpretation**

**1.2.1**   In this Restructuring Plan, unless the context otherwise requires or as otherwise expressly provided:

(a)   references to Clauses and Schedules are references to the Clauses of, and Schedules to, the Restructuring Plan and a reference to this "Restructuring Plan" includes a reference to each of the Schedules to this Restructuring Plan;

(b)   references to a statute or statutory provision include the same as subsequently modified, amended, supplemented or re-enacted from time to time;

(c)   references to the Information Agent, the Plan Company, a BrazilCo Plan Creditor, an Undertaking Party, or any other person shall be construed so as to include its and any subsequent successors in title, permitted assigns and permitted transferees;

(d)   where references to any actions, provisions or terms are stated as requiring the consent of the Majority Plan Creditors, such consent shall be deemed to be granted if it has been provided in writing (including by e-mail) by the Majority Plan Creditors' Advisors;

(e)   references to a person include references to an individual, firm, partnership, company, corporation, unincorporated body of persons or any state or state agency;

(f)   references to an agreement, deed or document will be deemed also to refer to such agreement, deed or document as amended, supplemented, restated, varied, verified, replaced and/or novated (in whole or in part) from time to time and to any agreement, deed or document executed pursuant thereto, provided that such amendment, supplement, restatement, variation, verification, replacement and/or novation has, to the extent it relates to an Implementation Document or this Restructuring Plan, been made in accordance with the terms of this Restructuring Plan, the Transaction Implementation Deed or otherwise the terms of such Implementation Document;

(g)   references to an agreement, deed or document shall include any schedules, annexes and appendices to such agreement, deed or document;

(h)   references to (or to any specified provision of) the Restructuring Plan shall be construed as references to the Restructuring Plan as in force for the time being;

(i)   references to a BrazilCo Plan Creditor shall be references to a BrazilCo Plan Creditor in its capacity as a BrazilCo Plan Creditor and an obligation or Liability of a BrazilCo Plan Creditor shall apply to its successors, transferees and assigns (as applicable);

(j)   the singular includes the plural and vice versa and words importing one gender shall include all genders;

(k)   headings to Clauses are for ease of reference only and shall not affect the interpretation of the Restructuring Plan;

(l)   unless otherwise stated, all references in the Restructuring Plan to dates and times are to the date and time prevailing in London, United Kingdom;

14

(m) "including" or "include" shall be deemed to mean including or include without limitation;

(n) "or" is not exclusive;

(o) general words introduced by the word "other" shall not be given a restrictive meaning by reason of the fact that they are preceded by words indicating a particular class of acts, matters or things and general words shall not be given a restrictive meaning by reason of the fact that they are followed by particular examples intended to be embraced by the general words; and

(p) "**US$**" denotes the lawful currency of the United States of America.

**2       APPLICATION AND EFFECTIVENESS OF THE RESTRUCTURING PLAN**

**2.1**    As soon as reasonably practicable following, and in any event within two Business Days of, the granting of the Plan Sanction Order (or such later date as agreed between the Plan Company and the Majority Plan Creditors' Advisors, each acting reasonably), the Plan Company shall deliver a certified copy of the Plan Sanction Order to the Registrar of Companies in England and Wales for registration in accordance with section 901F of the Act.

**2.2**    Unless otherwise stated and subject to Clause 8.1, the Restructuring Plan shall become effective and legally binding on the Plan Company and each of the BrazilCo Plan Creditors in accordance with its terms on and from the date certified copies of the Plan Sanction Order and the order or orders of the Court sanctioning the CoreCo Plan are delivered to the Registrar of Companies for registration (the "**Plan Effective Date**").

**2.3**    The compromises and arrangements effected by the Restructuring Plan will bind:

**2.3.1**   all BrazilCo Plan Creditors and all of their respective rights, title and interests to BrazilCo Plan Claims and, in each case, their respective permitted successors and assigns;

**2.3.2**   the Plan Company and its respective permitted successors and assigns;

**2.3.3**   subject to the terms of the applicable Deed of Undertaking, each Undertaking Party and its respective permitted successors and assigns; and

**2.3.4**   each other person that has undertaken to be bound by the terms of this Restructuring Plan and their respective permitted successors and assigns.

15

**2.4**   The Plan Company shall notify the Information Agent in accordance with Clause 10 (*Notice*) as soon as reasonably practicable following the occurrence of the Plan Effective Date, and the Information Agent shall make such notice available on the Plan Website.

**3**   **GRANT OF AUTHORITY TO EXECUTE THE IMPLEMENTATION DOCUMENTS**

**3.1**   **Plan Company's Authority to Execute and Give Effect to the Implementation Documents**

**3.1.1**   Subject to the terms of this Clause 3 and Clause 8 (*Termination*) below, with effect on and from the Plan Effective Date, in consideration of the rights and benefits conferred on the BrazilCo Plan Creditors under this Restructuring Plan and solely for the purpose of giving effect to the terms of this Restructuring Plan (and the transactions contemplated by it), notwithstanding any term of any other agreement, instrument or arrangement whatsoever (other than the Implementation Documents), each BrazilCo Plan Creditor hereby irrevocably appoints the Plan Company as its true and lawful attorney and agent, acting by any director, officer, employee or other duly authorised representative, for and on its behalf and in its name, and irrevocably authorises, directs, empowers and instructs the Plan Company, to:

(a)   enter into, execute and deliver as a deed, on behalf of each BrazilCo Plan Creditor in its capacity as a BrazilCo Plan Creditor, the Transaction Implementation Deed, such that each BrazilCo Plan Creditor will become a party to and be bound by the Transaction Implementation Deed;

(b)   enter into, sign, execute, notarise, acknowledge, release, deliver (whether as a deed or otherwise) and, where applicable, file each Implementation Document to which such BrazilCo Plan Creditor is expressed to be a party, such that such BrazilCo Plan Creditor shall be a party to and bound by each such document as if it had executed it personally, in each case in its capacity as BrazilCo Plan Creditor;

(c)   enter into, sign, execute and deliver all deeds, agreements, instruments, certificates, confirmations, notices, elections, transfers, assignments, releases, directions, instructions and filings (including security, guarantee, escrow, perfection and regulatory filings) which are scheduled to, contemplated by, or expressly referred to in, or reasonably required to implement or give effect to this Restructuring Plan or any Implementation Document to which such BrazilCo Plan Creditor is expressed to be a party;

(d)   agree, consent to and effect, on behalf of such BrazilCo Plan Creditor, any amendment, waiver, modification or supplement to any Implementation Document or ancillary document (to which such BrazilCo Plan Creditor is expressed to be a party) which the Plan Company considers necessary or reasonably desirable in connection with the Restructuring provided that any such amendment, modification or supplement is made in accordance with Clause 6 (*Modifications of this Restructuring Plan*);

(e)   give all notices, confirmations, directions and instructions to any trustee, agent, paying agent, information agent, clearing system, registrar, custodian or Administrative Party as may be required or desirable to give effect to this Restructuring Plan and the Implementation Documents;

16

(f) execute and deliver any release, discharge or waiver required to implement the releases and compromises and extinguishment of claims contemplated by this Restructuring Plan and grant the releases under and in accordance with the Transaction Implementation Deed;

(g) take any step, make any determination and do any act which the Plan Company considers necessary to carry out, enforce or consummate this Restructuring Plan and the transactions contemplated by it, including actions required under the laws of any jurisdiction (acting reasonably and, with respect to any step, determination or action not contemplated by the Transaction Implementation Deed, with the consent of the Majority Plan Creditors (unless such step, determination or action is required by applicable law, in which case no such consent shall be required but if permitted, the Plan Company shall provide written notice of any such step, determination or action being undertaken to the BrazilCo Plan Creditors)), provided that such related or ancillary actions do not change any right or obligation of, or impose an additional obligation (by reference to such rights or obligations as are contemplated as at the Plan Effective Date) on, a BrazilCo Plan Creditor and do not adversely affect any BrazilCo Plan Creditor;

(h) grant powers of attorney or authorities (under English law or any other applicable law) with equivalent or lesser scope to the power of attorney granted by this Clause 3 to any person selected by the Plan Company for the purposes of implementing the documents and steps set out in this Clause 3.1.1; and

(i) do all such other related or ancillary acts and things as the Plan Company considers (acting reasonably and, with respect to any action not contemplated by the Transaction Implementation Deed, with the consent of the Majority Plan Creditors) to be reasonably necessary or desirable to the full and timely implementation of this Restructuring Plan and the transactions contemplated by it, provided that such other acts or things do not change any right or obligation of, or impose an additional obligation (by reference to such rights or obligations as are contemplated as at the Plan Effective Date) on, a BrazilCo Plan Creditor and do not adversely affect any BrazilCo Plan Creditor.

**3.2** Subject to the terms of this Clause 3 and Clause 8 (*Termination*) below, the authority and power of attorney granted pursuant to this Clause 3 is irrevocable, being granted for valuable consideration and to secure the performance of obligations under this Restructuring Plan.

**3.3** Each BrazilCo Plan Creditor waives any right to revoke or terminate such authority except as expressly provided in this Restructuring Plan.

**3.4** Each BrazilCo Plan Creditor irrevocably agrees that it shall be bound by, and shall comply with, each Implementation Document and any ancillary document to which such BrazilCo Plan Creditor is a party (as if it were an original executing party) after such document has been fully executed, dated, released and delivered by the Plan Company on its behalf

17

pursuant to, and in accordance with, this Clause 3 and the Transaction Implementation Deed.

**3.5**   The authority granted pursuant to this Clause 3 shall:

**3.5.1**   continue until the earlier of (i) Restructuring Effective Date or (ii) such other termination date as expressly provided in this Restructuring Plan, at which time it shall automatically expire; and

**3.5.2**   automatically lapse in respect of any Implementation Document or ancillary document once that document has been fully executed, released and delivered, whereupon it may thereafter be amended only in accordance with its terms.

**3.6**   Nothing in this Clause 3 authorises or permits the Plan Company to commence any Proceedings in the name of, or on behalf of, any BrazilCo Plan Creditor.

**3.7**   Promptly following any amendments, modification or variations being made to any Implementation Document pursuant to this Clause 3, the Plan Company shall procure that such Implementation Document (as amended, modified or varied) is promptly made available to the BrazilCo Plan Creditors and each relevant Undertaking Party via the Plan Website and in accordance with the notice provisions of the applicable Deed of Undertaking (if any).

**3.8**   **Administrative Parties' Authority**

**3.8.1**   Subject to the terms of any Deed of Undertaking or applicable Implementation Document, with effect on and from the Plan Effective Date, each of the BrazilCo Plan Creditors hereby irrevocably authorises and instructs each applicable Administrative Party, as their agent and attorney (acting by any one of their duly appointed representatives) to:

(a)   enter into, execute, deliver and perform (whether as a deed or otherwise) each Implementation Document to which such Administrative Party is expressed to be a party, provided that such Implementation Documents (other than the Transaction Implementation Deed) shall only become effective in accordance with their respective terms and as provided in the Transaction Implementation Deed and this Restructuring Plan, whereupon they shall become binding on all parties thereto;

(b)   take all steps and do all other things as may be necessary or reasonably desirable to give effect to or implement the Restructuring, this Restructuring Plan and the transactions contemplated by it, including entering into, executing and delivering all such documents as the Plan Company reasonably requests or the relevant Administrative Party considers reasonably necessary or desirable for such purpose, and taking any step expressed in this Restructuring Plan or any Implementation Document to be taken by such Administrative Party;

(c)   act and rely, without further verification, on any written instruction from the Plan Company (acting on behalf of the BrazilCo Plan Creditors pursuant to Clause 3.1) to take any action referred to in this Clause 3.8 or otherwise under this Restructuring Plan, and be entitled to assume that any such instruction complies with the terms of this Restructuring Plan and the Implementation Documents;

18

(d)  give all such instructions, consents or confirmations to any trustee, agent, security agent, paying agent, registrar, clearing system or other Administrative Party as are reasonably requested by the Plan Company (in accordance with the authority granted to it under this Restructuring Plan, where applicable), and any other directions that may reasonably be requested by the Plan Company (in accordance with the authority granted to it under this Restructuring Plan, where applicable), for the purposes of implementing any step contemplated by the Restructuring or this Restructuring Plan; and

(e)  take each step under this Restructuring Plan or any Implementation Document expressed to be taken by the relevant Administrative Party, including the giving, execution, delivery and performance of any obligations, consents, confirmations, acknowledgements, agreements, waivers or authorizations, in each case as reasonably requested by the Plan Company (in accordance with the authority granted to it under this Restructuring Plan, where applicable) for the purposes of implementing this Restructuring Plan and subject to applicable law and the terms of the relevant Implementation Documents, and

each BrazilCo Plan Creditor acknowledges and irrevocably confirms, authorizes, directs, and ratifies any such action taken by any Administrative Party on or prior to the Plan Effective Date, and in each case provided that each Administrative Party shall have all of the protections, immunities, rights, powers, authorities, indemnities, exculpations, exclusions or limitations of liability and/or benefits conferred on it under and by the applicable Debt Documents governing its appointment and, upon such document's effectiveness and in respect of actions taken after the effectiveness thereof, the Implementation Documents.

3.8.2   No Administrative Party shall have any Liability to the Plan Company, any BrazilCo Plan Creditor or any of their respective Affiliates for any action taken, document executed or reliance placed on any instruction given to it in accordance with Clause 3.8.1 above, except to the extent arising from its fraud, gross negligence or willful misconduct as determined by a final non-appealable judgment issued by a court of competent jurisdiction.

3.8.3   In complying with any authorisations, instructions or requests pursuant to this Clause 3.8, each Administrative Party:

(a)  shall be entitled to assume that any instructions received by it pursuant to this Restructuring Plan have been duly given in accordance with its terms and the relevant Debt Documents or Implementation Documents;

(b)  shall be entitled to assume that, unless it has received notice to the contrary, such instructions have not been revoked;

(c)  shall not be obliged to do or omit to do anything if it would, or might in its reasonable opinion, constitute a breach of any applicable law, regulation or contractual obligation or any duty binding upon it;

(d)  shall have only those duties, obligations and responsibilities as are expressly specified in this Restructuring Plan and the Implementation Documents to which it is a party (and no others shall be implied), and such duties shall be of a mechanical and administrative nature;

19

(e) shall not be responsible for the legality, validity, effectiveness, adequacy or enforceability of any Implementation Document or any transaction contemplated by this Restructuring Plan; and

(f) shall not be liable (other than in the case of fraud, gross negligence or willful misconduct on the part of such Administrative Party as determined by a final non-appealable judgment issued by a court of competent jurisdiction) for any loss, Liability or damage, or any failure or delay in the performance of its obligations, arising out of or in connection with:

(i) any action taken or omitted to be taken in accordance with instructions received pursuant to this Restructuring Plan;

(ii) the exercise or non-exercise of any right, power, authority or discretion conferred on it; or

(iii) any event or circumstance beyond its reasonable control, including (without limitation) governmental action, market disruption, failure of systems or communications, natural events or industrial action.

**3.9** The authorities, appointments and instructions granted in Clauses 3.1 and 3.8 shall be treated, for all purposes whatsoever and without limitation, as having been granted by deed.

## 4     DEEDS OF UNDERTAKING

**4.1** Subject to Clause 8 (*Termination*) and the terms of the Deeds of Undertaking executed by them, each of the Undertaking Parties severally undertakes, with effect on and from the Plan Effective Date: (i) to be bound by, and to comply with, and to perform, the obligations expressed to apply to it in this Restructuring Plan and the Undertakings (as defined therein) set out in its Deed of Undertaking, and (ii) to take all steps and execute all such documents as may be necessary or reasonably desirable for the purpose of giving effect to this Restructuring Plan, including executing and delivering (through power of attorney appointed under the Deed of Undertaking or otherwise) the Implementation Documents to which they will be a party and the documentary conditions precedent (if any) applicable to them. Each BrazilCo Plan Creditor (in respect of the applicable Administrative Parties who are Undertaking Parties only) and the Plan Company ratifies the execution by each Undertaking Party of its Deed of Undertaking and the taking of any actions by such Undertaking Party pursuant to this Clause 4.1.

## 5     CLOSING STEPS AND PLAN CONSIDERATION

**5.1     Closing Steps**

**5.1.1** As soon as reasonably practicable following the Plan Effective Date, the Plan Company shall execute the Transaction Implementation Deed for and on behalf of itself, the applicable Undertaking Parties as attorney for such Undertaking Parties in accordance with their Deeds of Undertaking, and, in accordance with Clause 3 (*Grant of Authority to Execute the Implementation Documents*), on behalf of the BrazilCo Plan Creditors.

**5.1.2** The steps to be taken to implement the Restructuring and the transactions contemplated in the Plans (the "**Closing Steps**") shall take place in accordance

with, and in the order and at the times specified in, the terms of the Transaction Implementation Deed.

**5.1.3** The applicable Implementation Documents shall be signed, dated and released in accordance with the Transaction Implementation Deed.

## 5.2 Plan Consideration

**5.2.1** The BrazilCo Plan Creditors acknowledge and agree that the BrazilCo Plan Creditors shall:

(a) receive their Plan Consideration in accordance with the terms set out in the Transaction Implementation Deed; and

(b) give the authorities, instructions, undertakings, releases, ratifications, and waivers in favour of the Plan Company and the Released Parties, where applicable, in consideration of the rights provided to each BrazilCo Plan Creditor under this Restructuring Plan and the Transaction Implementation Deed.

**5.2.2** The Plan Consideration of the BrazilCo Plan Creditors shall be calculated and paid (or issued, as applicable) in accordance with the Transaction Implementation Deed, including that a BrazilCo Plan Creditor may receive Plan Consideration via the Holding Period Trust if necessary and in accordance with the terms of the Holding Period Trust Deed, and shall include the following Plan Consideration Instruments (each as defined in the Transaction Implementation Deed):

| BrazilCo Plan Debt | Plan Consideration Instruments |
|---|---|
| 2029 New Notes Debt | BrazilCo Common Equity |

## 5.3 Standstill

**5.3.1** On and from the Plan Effective Date until the Restructuring Effective Date, or if earlier, until the termination of this Restructuring Plan in accordance with Clause 8 (*Termination*), each BrazilCo Plan Creditor shall not (and no person or entity shall be entitled to, on behalf of such BrazilCo Plan Creditor), in any jurisdiction:

(a) exercise or seek to exercise any rights, remedies, powers or discretions (including any right to accelerate, enforce any guarantee or make any demand in respect of any Liability) under or in connection with the Debt Documents, or instruct or direct any other person to do so;

(b) commence, continue or take any step in relation to any legal, judicial, administrative, arbitral or other proceedings against the Plan Company or any other Existing Obligor or their respective assets or proceeds thereof (including the enforcement of any judgment, order, award, lien or security), or instruct or direct any other person to do so, in each case in connection with the Debt Documents (other than any action taken in response to, or in connection with, any proceedings commenced by or on behalf of any member of the Group);

(c) take any step to enforce, attach, sequester or levy execution against any asset of the Plan Company or any other Existing Obligor, or to enforce or realise any security

or other encumbrance, or instruct or direct any other person to do so, in each case in connection with the Debt Documents; or

(d) take any action which would, or would reasonably be expected to, impede, delay or frustrate the implementation of the transactions contemplated by this Restructuring Plan,

in each case, other than as expressly contemplated by, and in accordance with, this Restructuring Plan, the Transaction Implementation Deed or any other Implementation Document, or where such action is taken for the purpose of giving effect to the Restructuring.

## 6   MODIFICATIONS OF THIS RESTRUCTURING PLAN

6.1   The Plan Company may, subject to the terms of the Restructuring Support Agreement (including the consent rights contained therein), at any hearing to sanction this Restructuring Plan, acting reasonably and in good faith, consent on behalf of the BrazilCo Plan Creditors to any modification, amendment, variation or supplement to or of this Restructuring Plan, the Transaction Implementation Deed or any other Implementation Document on terms or conditions that the Court may think fit to approve or impose for the purpose of consummating or implementing this Restructuring Plan, provided that such modification, amendment, variation or supplement cannot reasonably be expected to, directly or indirectly: (i) have a material and adverse or, relative to the other BrazilCo Plan Creditors, disproportionate effect on the rights or interests of a BrazilCo Plan Creditor under this Restructuring Plan or any Implementation Document; or (ii) alter any right or obligation, or impose any additional or new material obligation on any BrazilCo Plan Creditor (by reference to such rights or obligations as contemplated as at the Record Date), in each case unless such BrazilCo Plan Creditor consents in writing.

6.2   After the Plan Sanction Order has been granted, the terms of this Restructuring Plan may be amended, waived or supplemented with the consent of the Plan Company and the Majority Plan Creditors, provided that such amendment, waiver or supplement is only of a technical or non-material nature or to correct a manifest error, and provided further that any such proposed amendment, waiver or supplement cannot reasonably be expected to, directly or indirectly: (i) have a material and adverse or, relative to the other BrazilCo Plan Creditors, disproportionate effect on the rights or interests of a BrazilCo Plan Creditor under this Restructuring Plan or any Implementation Document; or (ii) alter any right or obligation, or impose any additional or new material obligation on any BrazilCo Plan Creditor (by reference to such rights or obligations as contemplated as at the Record Date), in each case unless such BrazilCo Plan Creditor consents in writing.

6.3   No modification, amendment, variation or supplement shall be made to this Clause 6 without the consent of each BrazilCo Plan Creditor, and no modification, amendment or variation to the designation of documents as Implementation Documents hereunder shall be made without the consent of the Majority Plan Creditors. No modification, amendment, variation or supplement that affects the rights or duties of any Administrative Party shall be made without the consent of such Administrative Party.

6.4   The Plan Company shall promptly notify the BrazilCo Plan Creditors (by notice to the Majority Plan Creditors' Advisors and by the Information Agent making such notice available on the Plan Website) and each Administrative Party (in accordance with the notice provisions of the applicable Deed of Undertaking) of the occurrence of any modification,

amendment or variation made to this Restructuring Plan or any Implementation Document in accordance with this Clause 6.

**6.5** Nothing in this Restructuring Plan or the Transaction Implementation Deed shall govern the modification, amendment or waiver of any Implementation Document once such document becomes effective in accordance with its terms.

**7      RELEASES**

**7.1** Subject to Clause 7.2, with effect from the Restructuring Effective Date, each Plan Party (on behalf of itself and each of its permitted successors and assigns) irrevocably, unconditionally, fully and absolutely:

**7.1.1** pursuant to this Restructuring Plan, waives, releases and forever discharges any and all actions, proceedings, claims, damages, counterclaims, complaints, liabilities, liens, rights, demands, causes of action, set-offs or other obligations, whether present or future, prospective or contingent, whether in this jurisdiction or any other or under any law, of whatsoever nature and howsoever arising, whether in law or in equity, in contract (including, but not limited to, breaches or non-performances of contract), in statute or in tort (including, but not limited to, negligence and misrepresentation) or in any other manner whatsoever, breaches of statutory duty, for contribution, or for interest and/or costs and/or disbursements, whether or not for a fixed or unliquidated amount, whether filed or unfiled, whether asserted or unasserted, whether or not presently known to the parties or to the law, in each case that it ever had, may have or hereafter can, shall or may have arising out of actions, omissions or circumstances occurring on or prior to the Restructuring Effective Date against each and any Released Party whatsoever or howsoever arising (and notwithstanding any subsequent facts or information becoming known following the Restructuring Effective Date), in relation to or arising directly or indirectly out of or in connection with: (a) the negotiation, preparation, sanction or implementation of the Plans and/or the Restructuring; or (b) the BrazilCo Plan Claims (in each case, including, without limitation, the negotiation, preparation, sanction, execution or implementation of any Implementation Documents);

**7.1.2** pursuant to this Restructuring Plan, waives, releases and forever discharges all rights, title and interest it has in the BrazilCo Plan Claims, and all Liabilities owed by a Group Company to any Plan Party in relation to such BrazilCo Plan Claims; and

**7.1.3** undertakes to the Released Parties that it will not commence or continue, or instruct, direct or authorise any other person to commence or continue, any process, action, other legal proceedings (including, without limitation, any demand, arbitration, alternative dispute resolution, judicial review, adjudication, execution, seizure, distraint, forfeiture, re-entry, lien, enforcement of judgment or enforcement of any security), in any jurisdiction whatsoever against any Released Party in respect of the actions ratified or the waivers, releases, and discharges referred to in Clauses 7.1.1 and 7.1.2 above.

**7.2** Clause 7.1 shall not discharge, limit, vary, impact, compromise or otherwise affect in any way: (i) the Excluded Liabilities, (ii) any rights of any Plan Party arising under or in connection with the Implementation Documents (including guarantees or security interests or other obligations and any rights to submit claims and, if eligible, receive distributions in accordance with the Restructuring Plan or any Implementation Document), or (iii) any

23

claims of any Plan Party which may arise or accrue in relation to acts, omissions or circumstances occurring after the Restructuring Effective Date.

**7.3**     Nothing in this Restructuring Plan shall prevent a BrazilCo Plan Creditor from responding to or taking any action to defend itself in any claims or Proceedings which are asserted against it or any of its Representatives.

**8**     **TERMINATION**

**8.1**     This Restructuring Plan shall terminate with immediate effect upon the occurrence of any of the following events:

**8.1.1**     the Restructuring Effective Date does not occur on or before the Restructuring Long-Stop Time; or

**8.1.2**     the Transaction Implementation Deed terminates in accordance with its terms prior to the Restructuring Effective Date (other than as a result of the Restructuring Effective Date having occurred).

**8.2**     Upon termination of this Restructuring Plan pursuant to Clause 8.1:

**8.2.1**     the terms of and the obligations on, and rights granted to, the Plan Parties under or pursuant to this Restructuring Plan and any Implementation Document shall lapse and be of no further force or effect;

**8.2.2**     all compromises, arrangements and releases provided for under or pursuant to this Restructuring Plan and each other Implementation Document shall be of no effect and shall be construed as if this Restructuring Plan and each other Implementation Document had never become effective;

**8.2.3**     the rights and obligations of the BrazilCo Plan Creditors shall remain unaffected by this Restructuring Plan and shall be reinstated and remain in full force and effect as they applied immediately prior to the Plan Effective Date; and

**8.2.4**     any defaults under any agreement governing the terms of any BrazilCo Plan Claim, including the Debt Documents, and any consequences thereof (including any alleged deemed or actual acceleration) shall be reinstated as if such default had been continuing since the date on which it originally occurred or was deemed to occur.

**8.3**     Promptly following termination of this Restructuring Plan, the Plan Parties shall execute such documents and perform such acts and things as are reasonably necessary and/or desirable to give effect to Clause 8.2 and 8.4 (including, where applicable, reversing any steps taken in contemplation of the implementation of the Restructuring).

**8.4**     In the event of termination of this Restructuring Plan pursuant to this Clause 8, the Plan Company shall promptly notify all BrazilCo Plan Creditors (by notice to the Majority Plan Creditors' Advisors and by the Information Agent making such notice available on the Plan Website) and the Administrative Parties, and any release, standstill, power of attorney, instruction or authority granted pursuant to this Restructuring Plan or any Implementation Document shall be automatically revoked and terminated. Any action taken under any

24

power of attorney granted pursuant to this Restructuring Plan shall be automatically void and of no further force or effect.

**8.5**     This Clause 8, Clause 1 (*Definitions and Interpretation*) and Clause 12 (*Governing Law and Jurisdiction*) shall survive any termination of this Restructuring Plan.

## 9     GENERAL RESTRUCTURING PLAN PROVISIONS

**9.1     Ratification**

**9.1.1**     In consideration for its rights and entitlements under this Restructuring Plan, and subject to the occurrence of, the Restructuring Effective Date:

(a) each Plan Party hereby irrevocably ratifies and confirms everything which:

(i) the Plan Company and its respective directors, officers or other duly appointed representatives have lawfully done or caused to be done, to the extent compliant with the terms of this Restructuring Plan and the Implementation Documents;

(ii) was lawfully done or caused to be done by any Undertaking Party or its representatives pursuant to any authority conferred by this Restructuring Plan or the Implementation Documents; and

(iii) the Information Agent and its respective directors, managers, officers or other duly appointed representatives has each lawfully done or caused to be done or purported to be done, in each case to the extent in compliance with this Restructuring Plan or the Implementation Documents,

in each case on or prior to the Restructuring Effective Date; and

(b) each BrazilCo Plan Creditor hereby irrevocably undertakes to the Plan Parties to treat all BrazilCo Plan Claims and the (direct and indirect) rights and obligations of each BrazilCo Plan Creditor under the Debt Documents as having been effectively varied and/or released in the manner envisaged by this Restructuring Plan, the Transaction Implementation Deed and the Implementation Documents.

**9.2     Costs**

**9.2.1**     The Plan Company or another Group Company will pay in full all costs, charges, expenses, and disbursements incurred by it in connection with the negotiation, preparation, and implementation of this Restructuring Plan as and when they arise, including, but not limited to, the costs of holding the Plan Meetings, the costs of obtaining the sanction of the Court and the costs of placing notices (if any) required by this Restructuring Plan.

**9.3     Record Date**

**9.3.1**     For the purposes of calculating entitlements to receive Plan Consideration, all BrazilCo Plan Claims shall be determined by the Plan Company, acting on information provided by the Information Agent, in accordance with the methodology set out in the Transaction Implementation Deed, as at the Record Date.

25

**9.4**    **Assignments or transfers**

**9.4.1**    The Plan Company shall be under no obligation to recognise any assignment or transfer of rights, benefits or interests in the Debt Documents after the Record Date for the purposes of calculating entitlements to receive Plan Consideration under this Restructuring Plan and has no obligations hereunder to any person other than the BrazilCo Plan Creditors on the Record Date, provided that, where the Plan Company has received from the relevant parties notice in writing of such assignment or transfer prior to the Restructuring Effective Date, the Plan Company may, in its sole discretion and subject to the production of such other evidence in relation to such assignment or transfer as it may reasonably require and to any other terms and conditions which the Plan Company may consider necessary or desirable, acting reasonably, agree to recognise such assignment or transfer for the purposes of calculating entitlements to receive Plan Consideration under this Restructuring Plan.

**9.4.2**    Any assignee or transferee of the interests in the Debt Documents recognised by the Plan Company pursuant to this Clause 9.4 shall be bound by the terms of the Restructuring Plan as a BrazilCo Plan Creditor and shall produce such evidence as the Plan Company may reasonably require to confirm that it has agreed to be bound by the terms of this Restructuring Plan.

**9.5**    **Obligations on days other than a Business Day**

**9.5.1**    If any obligation is to be performed under the terms of the Restructuring Plan on a date other than a Business Day, the relevant obligation shall be performed on the next Business Day.

**9.6**    **Exercise of discretion**

**9.6.1**    Where, under or pursuant to any provision of this Restructuring Plan, a matter is to be determined by the Plan Company, it will be determined by the directors of the Plan Company in their discretion in such manner as they may consider fair and reasonable.

**9.7**    **Severability**

**9.7.1**    If at any time any provision of this Restructuring Plan is or becomes illegal, invalid or unenforceable in any respect under the law of any jurisdiction, such provision shall be severed from the Restructuring Plan for the purposes of that jurisdiction, and neither the legality, validity or enforceability of that provision under the law of any other jurisdiction nor the legality, validity or enforceability of any other provision of this Restructuring Plan under the law of that or any other jurisdiction will in any way be affected or impaired thereby, and the rest of the Restructuring Plan shall continue in full force and effect in that jurisdiction as if the severed provision had not been included.

**9.8**    **BrazilCo Plan Creditors' obligations**

**9.8.1**    The obligations of each BrazilCo Plan Creditor under this Restructuring Plan are several.

**9.9**   **Conflict**

   **9.9.1**   In the case of any conflict or inconsistency between the terms of this Restructuring Plan and the terms of the Explanatory Statement, the terms of this Restructuring Plan will prevail.

**10**   **NOTICE**

**10.1**   Any notices (including any service of process in connection with a breach of the Restructuring Plan) shall be given in writing and shall be deemed to have been duly given if it is uploaded to the Plan Website *and* delivered by hand, pre-paid first class post, airmail or electronically to the following parties:

   (a)  if to the Plan Company, to:

>  NFE Brazil Newco Limited
>  Suite 1, 7th Floor 50 Broadway
>  London SW1H 0DB
>  United Kingdom
>  Email: NFEBrazilUK@newfortressenergy.com
>  Attention: Office of the General Counsel

   with copies (which shall not constitute notice) to:

>  Skadden, Arps, Slate, Meagher & Flom (UK) LLP
>  22 Bishopsgate
>  London EC2N 4BQ
>  United Kingdom
>  Email: Peter.Newman@Skadden.com;
>  Christopher.Dressel@skadden.com; and DLPLady@Skadden.com
>  Attention: Peter Newman; Christopher Dressel

   (b)  if to a BrazilCo Plan Creditor, to its last known address, fax number or email address stated in the Plan Creditor Letter or failing that according to the Notice Records, and if to any member of the PW/PWP AHG, with copies (which shall not constitute notice) to:

>  Paul, Weiss, Rifkind, Wharton & Garrison LLP
>  1285 Avenue of the Americas
>  New York, New York 10019
>  Attention: Andrew Rosenberg; Sung Pak; Kyle R. Satterfield
>  Email: arosenberg@paulweiss.com; spak@paulweiss.com;
>  ksatterfield@paulweiss.com

   (c)  if to the Information Agent, to:

> Kroll Issuer Services Limited
> The News Building 3 London Bridge Street
> London SE1 9SG
> United Kingdom
> Attention: Ivan Santek/ Alessandro Zorza
> E-mail: nfe@is.kroll.com
> Phone: +44 20 7089 0909
> Plan Website: https://deals.is.kroll.com/nfe

**10.2**   BrazilCo Plan Creditors and any Administrative Party shall have the right to request a paper copy of any Notice by contacting the Information Agent. The Information Agent shall send such requested documents by first class post in respect of BrazilCo Plan Creditors whose address is in the UK and by "international standard post" in respect of BrazilCo Plan Creditors whose address is outside the UK.

**10.3**   Any Notice shall be deemed to have been delivered and served:

    (a)  if by way of e-mail:

        (i)  subject to Clause 10.3(a)(ii), when sent; and

        (ii)  if one or more E-Mail Error Messages are sent from and with respect to a person's e-mail address for the purposes of Notices within one hour of such e-mail being sent, the e-mail shall not be deemed to be delivered and effective unless the intended recipient confirms receipt (but failure of an e-mail to be deemed delivered and effective shall not affect other or subsequent e-mails, or delivery of a communication or document pursuant to another method permitted under this Clause 10);

    (b)  if by way of letter, five Business Days after being deposited in the post postage prepaid in an envelope and addressed correctly;

    (c)  if delivered by hand or courier, on the first Business Day following delivery; and

    (d)  if by way of upload to the Plan Website, when viewable on the Plan Website (written notice of which shall be distributed by the Plan Company to each Plan Party); and, if a particular department or officer is specified as part of the address details provided under this Clause 10, if addressed to that department or officer (other than with respect to Clause 10.3(d)).

**10.4**    In proving service, it shall be sufficient proof, in the case of a Notice sent by post, that the envelope was properly stamped, addressed and placed in the post.

**10.5**    The accidental omission to send any Notice, written communication or other document in accordance with this Clause 10, or the non-receipt of any such Notice by any BrazilCo Plan Creditor, shall not affect the provisions of the Restructuring Plan or their effectiveness.

**11**    **PLAN PARTIES**

**11.1**    Each Plan Party shall enjoy the benefit and be entitled to enforce the terms of this Restructuring Plan.

**11.2**    Except as provided in this Restructuring Plan, no rights are conferred on any person under the Contracts (Rights of Third Parties) Act 1999 to enforce the terms of this Restructuring Plan.

**12**    **GOVERNING LAW AND JURISDICTION**

**12.1**    **Subject to Clause 12.2**:

   **12.1.1**    the Restructuring Plan and any non-contractual obligations arising out of or in connection with the Restructuring Plan shall be governed by, and construed in accordance with, the laws of England and Wales; and

   **12.1.2**    the BrazilCo Plan Creditors hereby agree that the Court shall have exclusive jurisdiction to hear and determine any suit, action or proceeding and to settle any dispute which may arise out of or in connection with the Restructuring Plan, or out of any action taken or omitted to be taken under the Restructuring Plan or any non-contractual obligations arising out of or in connection with the Restructuring Plan. For such purposes the BrazilCo Plan Creditors irrevocably submit to the jurisdiction of the Court.

**12.2**    Nothing in this Clause 12 shall:

   **12.2.1**    affect the validity of other provisions of the Implementation Documents (from and after the date such documents become effective) determining governing law and jurisdiction as between the Plan Company and the BrazilCo Plan Creditors, whether contained in any contract or otherwise; or

   **12.2.2**    prevent the Plan Company from relying upon the provisions of this Restructuring Plan in any foreign court or in any foreign proceedings.

**12.3**    The Restructuring Plan shall take effect subject to any prohibition or condition imposed by applicable law.

[*The remainder of this page is intentionally left blank*]

29

**Schedule 1 – Undertaking Parties**

Entities accompanied by an asterisk are planned to be dissolved within 30 or 60 days following the Restructuring Effective Date. In order to comply with that timeframe, the dissolution of certain of these entities may be commenced or completed prior to the sanction hearing in relation to the Plans. To the extent this occurs, an updated list will be filed with the court in advance of the sanction hearing with any such entities flagged.

1. Amaunet, S. de R.L. de C.V.

2. American Energy Logistics Solutions LLC *

3. Atlantic Energy Holdings LLC

4. Atlantic Pipeline Holdings SRL *

5. Bradford County Development Holdings LLC *

6. Bradford County GPF Holdings LLC *

7. Bradford County GPF Partners LLC *

8. Bradford County Power Holdings LLC *

9. Bradford County Power Partners LLC *

10. Bradford County Real Estate Partners LLC

11. Bradford County Transport Holdings LLC *

12. Bradford County Transport Partners LLC *

13. Encanto East LLC *

14. Encanto Power West LLC *

15. Encanto West LLC *

16. Island LNG LLC *

17. LA Development Holdings LLC *

18. LA Real Estate Holdings LLC *

19. LA Real Estate Partners LLC

20. LNG Holdings LLC *

21. Mexico FLNG Onshore S. de R.L. de C.V.

22. New Fortress Energy Holdings LLC

23. New Fortress Energy Inc.

24. New Fortress Energy Marketing LLC

25. New Fortress Intermediate LLC

26. NFE Altamira Onshore S. de R.L. de C.V.

27. NFE Andromeda Chartering LLC

28. NFE Angola Holdings LLC *

29. NFE Atlantic Holdings LLC

30. NFE BCS Holdings (A) LLC

31. NFE BCS Holdings (B) LLC

32. NFE BCS Mexico Holdings, S. de R.L. de C.V.

33. NFE Bermuda Holdings Limited

34. NFE Brazil Newco Limited

35. NFE Equipment Holdings LLC *

36. NFE Equipment Partners LLC

37. NFE Financing LLC

38. NFE FLNG 1 Issuer LLC

39. NFE FLNG 2 LLC

40. NFE Ghana Holdings LLC *

41. NFE Ghana Partners LLC *

42. NFE Global Holdings Limited

43. NFE Global Shipping LLC *

44. NFE GP LLC

45. NFE Grand Shipping LLC

46. NFE Honduras Holdings LLC *

47. NFE International Holdings

48. NFE International Holdings 1 Limited

49. NFE International Holdings 2 Limited

50. NFE International Holdings Limited

51. NFE International LLC

31

52. NFE International Shipping LLC

53. NFE ISO Holdings LLC *

54. NFE ISO Partners LLC

55. NFE Jamaica GP LLC *

56. NFE Logistics Holdings LLC *

57. NFE Management LLC

58. NFE Mexico Holdings Parent S. à R.L.

59. NFE Mexico Holdings S. à R.L.

60. NFE Mexico Power Holdings Limited

61. NFE Mexico Terminal Holdings Limited

62. NFE Nicaragua Development Partners LLC

63. NFE Nicaragua Development Partners LLC, Sucursal Nicaragua

64. NFE Nicaragua Holdings LLC

65. NFE North Trading LLC

66. NFE Pacifico LAP, S. de R.L. de C.V.

67. NFE Pioneer 1 LLC

68. NFE Pioneer 2 LLC

69. NFE Pioneer 3 LLC

70. NFE Plant Development Holdings LLC *

71. NFE Power PR LLC

72. NFE Shannon Holdings Limited

73. NFE South Power Holdings LLC

74. NFE South Power Trading Limited

75. NFE Sub LLC

76. NFE Transport Holdings LLC *

77. NFE Transport Partners LLC

78. NFE UK Holdings Limited

79. NFE US Holdings LLC

80.   Nfenergia GN de BCS, S. de R.L. de C.V.

81.   NFENERGÍA LLC

82.   Nfenergia Mexico, S. de R.L. de C.V.

83.   PA Development Holdings LLC *

84.   PA Real Estate Holdings LLC *

85.   PA Real Estate Partners LLC *

86.   Soluciones de Energia Limpia PR LLC

87.   Tico Development Partners Holdings LLC *

88.   Tico Development Partners LLC *

89.   NFE Brazil Funding LP *

90.   NFE Brazil Funding LLC *

91.   Hygo Energy Transition Ltd.

92.   NFE Brazil Financing Limited

93.   LNG Power Limited (UK)

94.   NFE Power Brasil Participações S.A.

95.   NFE Power Latam Participações e Comércio Ltda.

96.   CELBA – Centrais Elétricas Barcarena S.A.

97.   Barcarena Offshore Capital LLC

98.   NFE Power SSLNG Participações Ltda.

99.   NFE Power Distribuidora de Gás Natural Ltda.

100.   NFE Brazil Holdings Limited

101.   NFE Brazil Holdings LLC

102.   Shannon LNG Energy Limited

103.   Shannon LNG Limited

104.   NFE Brazil Investments LLC

105.   U.S. Bank Trust Company, National Association as 2026 Legacy Notes Trustee, 2029 Legacy Notes Trustee and Initial Common Representative

106. Wilmington Savings Fund Society, FSB as 2029 New Notes Trustee, Series I Agent, Series II Agent, and Brazil Parent Intercompany Agent

107. MUFG Bank, Ltd as RCF Agent and Second Additional Common Representative

108. Wilmington Trust, National Association, as TLA Agent, TLB Agent, First Equal Priority Agent, Second Equal Priority Agent, New CoreCo Term Loan Facility Agent and FLNG 2 Term Loan Agent

109. Natixis, New York Branch as New Common Representative

110. Kroll Issuer Services Limited as Holding Period Trustee and Information Agent.