**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| *In re* | **Chapter 15** |
| **NFE Global Holdings Limited** *et al.*, | **Case No. 26-11268 (MG)** |
| **Debtors in a Foreign Proceeding.**[1] | **(Jointly Administered)** |

**SUPPLEMENTAL DECLARATION OF**
**NICOLE STEPHANSEN IN SUPPORT OF**
**THE VERIFIED PETITION FOR (I) RECOGNITION**
**OF FOREIGN MAIN PROCEEDING, (II) RECOGNITION**
**OF FOREIGN REPRESENTATIVE, AND (III) RELATED**
**RELIEF UNDER CHAPTER 15 OF THE BANKRUPTCY CODE**

Pursuant to 28 U.S.C. § 1746, I, Nicole Stephansen, hereby declare under penalty of perjury that the following is true and correct to the best of my knowledge, information, and belief:

1.      I am a solicitor duly admitted to practice in England and Wales, an attorney-at-law duly admitted to practice in the state of New York, and a partner in the corporate restructuring group of the law firm Skadden, Arps, Slate, Meagher & Flom (UK) LLP ("**Skadden U.K.**"). Skadden U.K. is English counsel to the above-captioned foreign debtors (the "**Debtors**"), both of which are private companies limited by shares and organized under the laws of England and Wales.

2.      I submit this supplemental declaration (this "**Supplemental Declaration**") in further support of the *Verified Petition for (I) Recognition of Foreign Main Proceeding, (II)*

---

[1]     The Debtors and the last four digits of their respective foreign identification numbers are NFE Global Holdings Limited (9588) and NFE Brazil Newco Limited (1053).  The address of NFE Global Holdings Limited's registered office is Suite 1, 7th Floor, 50 Broadway, London SW1H 0BL, United Kingdom, and the address of NFE Brazil Newco Limited's registered office is Suite 1, 7th Floor, 50 Broadway, London SW1H 0DB, United Kingdom.

*Recognition of Foreign Representative, and (III) Related Relief Under Chapter 15 of the Bankruptcy Code* ("**Verified Petition**") [Docket No. 3].[2]

3.     The Debtors were the subject of concurrent proceedings (the "**English Proceedings**") before the High Court of Justice of England and Wales (the "**English Court**") concerning restructuring plans (the "**Restructuring Plans**") pursuant to Part 26A of the Companies Act 2006 (as modified, amended or re-enacted from time to time, the "**Companies Act**"), which have now concluded with the approval of the Restructuring Plans at a Sanction Hearing on June 18, 2026.

4.     I am over the age of 18 and, except as otherwise indicated, all facts set forth in this Supplemental Declaration are based upon my personal knowledge, my opinion based upon my experience and knowledge of the Group, and my review of relevant documents or information supplied to me.  In preparing this Supplemental Declaration, I have reviewed, among others, (i) the Chapter 15 Petitions, (ii) the Verified Petition, (iii) documents prepared or filed in connection with the English Proceedings, and (iv) Part 26A of the Companies Act and other relevant provisions of English law.  If I were called upon to testify, I could and would testify competently to the facts set forth herein.

5.     This Supplemental Declaration comprises matters that are statements of my view of English law or statements of fact.  Where the matters stated in this Supplemental Declaration are statements regarding English law, such statements represent my view of English law as a solicitor admitted and authorized to practice in England and Wales.  Where the matters stated in this Supplemental Declaration are statements of fact that are within my personal knowledge, they are true.  Where the matters stated in this Supplemental Declaration are statements of fact that are

---

[2]     Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Verified Petition.

2

not within my personal knowledge, they are derived, as appropriate, from documents maintained by Skadden U.K. as a result of advising the Group in connection with the English Proceedings, or from information supplied to me by or on behalf of the Foreign Representative, or his staff, and are true to the best of my knowledge, information, and belief.

6.      The purpose of this Supplemental Declaration is to provide additional information with respect to (i) the level of creditor support for the RSA and the Restructuring Plans; (ii) the notice and opportunities afforded to Plan Creditors to review and understand the Plan Releases; and (iii) the nature of the Plan Creditors who are subject to the Plan Releases.

**A.      Creditor Support for the RSA and the Restructuring Plans**

7.      The Restructuring Plans are supported by the overwhelming majority of Plan Creditors.  On 17 March 2026, the Group entered into the RSA with its key creditor constituencies. The RSA has been signed or supported by 778 creditors, representing approximately 97% of the Plan Debt by value.  In particular, the RSA has been signed or supported by creditors representing, on a reconciled basis: (i) 100.0% by value of the R-1 Revolving Facility; (ii) 99.9% by value of the R-2 Revolving Facility; (iii) 97.1% by value of the Term Loan B Facility; (iv) 100.0% by value of the Term Loan A Facility; (v) 84.6% by value of the 2026 Legacy Notes; (vi) 87.2% by value of the 2029 Legacy Notes; (vii) 100.0% by value of the Series I Intercompany Loan Facility; (viii) 100.0% by value of the Series II Intercompany Loan Facility; and (ix) 99.1% by value of the New 2029 Notes.

8.      The Debtors held the Plan Meetings on 15 June 2026 and the Restructuring Plans were approved with nearly unanimous consent, with unanimous votes in favor obtained in six out of the seven classes.  The remaining class received a near-unanimous 99.84% vote in favor.  Only one Plan Creditor (holding less than 0.1% of the total Plan Debt) voted against one of the

Restructuring Plans.  The turnout in each class was very high (99% to 100% by value across all classes, save for a single class where the turnout was 89.69% by value).  These figures demonstrate that there is an overwhelming level of support for the Restructuring Plans:

| Class[3] | % turnout (by value) | % voting in favour (of those who cast a vote, by value) |
| --- | --- | --- |
| | | |
| **CoreCo Plan** | | |
| R-1 Lenders | 100% | 100% |
| R-2 Lenders | 99.89% | 100% |
| TLB Lenders | 99.89% | 100% |
| TLA Lenders | 100% | 100% |
| Legacy Noteholders | 89.69% | 99.84% |
| Series I and II Lenders | 100% | 100% |
| | | |
| **BrazilCo Plan** | | |
| 2029 New Noteholders | 99.67% | 100% |

**B.      Notice and Opportunities Afforded to Plan Creditors to Review and Understand the Plan Releases**

9.      The Plan Creditors have been afforded extensive notice of, and multiple opportunities to review, consider, and object to, the Restructuring Plans and the Plan Releases.  In particular, Plan Creditors were entitled to be heard with respect to the Restructuring Plans at both the Convening Hearing and the Sanction Hearing.

10.      Plan Creditors received formal notice of the Plan Releases through multiple documents and proceedings, and were provided with contact information for the Information Agent and the Debtors' advisors to direct any questions regarding the Restructuring Plans, including the Plan Releases.  In particular, these materials and proceedings include:

(a)      The RSA, which was entered into on 17 March 2026, was published through DTC, a press release, a Form 8-K filing with the SEC, and was posted on the website maintained by Kroll as Information Agent for the Debtors at https://deals.is.kroll.com/nfe (the "**Kroll Website**").

---

[3]      Each "Class" as defined in the Explanatory Statement.

(b)     The Practice Statement Letter, which the Debtors issued to Plan Creditors on 20 April 2026, and which was made available on the Kroll Website.  Among other things, the Practice Statement Letter notified the Plan Creditors of the Debtors' intention to propose the Restructuring Plans, the proposed date of the Convening Hearing, and the composition of the proposed classes of Plan Creditors.  The Practice Statement Letter also described the Plan Releases and waivers contemplated by the Restructuring Plans.

(c)     The Convening Hearing evidence, including the Explanatory Statement and Restructuring Plans, filed by the Debtors with the English Court on 30 April 2026.  A notice of filing was posted on the Kroll Website that notified Plan Creditors that they could request copies of the  documents from the Debtors' advisors.

(d)     The Convening Hearing, held on 14 May 2026, where the English Court made the Convening Order directing the Debtors to convene meetings of Plan Creditors to consider and vote on the Restructuring Plans.  Plan Creditors were entitled to attend and be represented at the Convening Hearing and to raise any issues regarding the Restructuring Plans, including the Plan Releases.  Prior to the Convening Hearing, certain holders of GLP Preferred Units sought clarification as to whether the Plan Releases would release certain of their potential claims.  The Debtors confirmed that such potential claims were not released.  The holders of GLP Preferred Units appeared at the Convening Hearing but did not object or ask the English Court for any relief.  No Plan Creditor objected to or raised any concern regarding the Plan Releases at the Convening Hearing, and the deadlines set out in the Convening Order for challenging the Restructuring Plans have passed with no Plan Creditor filing an objection to the Restructuring Plans or the Plan Releases by the relevant deadlines.

(e)     The Explanatory Statement, dated 15 May 2026, which serves a function comparable to that of a disclosure statement required under section 1125 of the Bankruptcy Code in connection with the solicitation of votes on a chapter 11 plan, was available to all Plan Creditors on the Kroll Website from 16 May 2026 and notice of the same was provided to all Plan Creditors by 19 May 2026.  Section 8 of the Explanatory Statement is specifically dedicated to describing the releases and waivers, including a detailed summary of the scope of the Plan Releases, the Released Parties, and the carve-outs from the releases.  The Explanatory Statement provides Plan Creditors with sufficient information to make an informed decision on whether or not to approve the relevant Restructuring Plan and provided notice of the date of the Sanction Hearing.

(f)     The Plan Meetings, which took place on 15 June 2026, allowed the Plan Creditors to attend in person or by proxy and to consult and vote on the Restructuring Plans, including the Plan Releases.  No Plan Creditor raised any objection to the Plan Releases during the Plan Meetings and as noted above, nearly all Plan Creditors voted in favor of the Restructuring Plans.

(g)     The Sanction Hearing, which was held on 18 June 2026 during which Debtors' counsel team walked the English Court through the Plan Releases and the English Court considered whether it would be appropriate to approve the Plan Releases.  No Plan Creditor appeared to object to the Plan Releases or otherwise oppose sanction of the Restructuring Plans, and the English Court sanctioned the Restructuring Plans including the Plan Releases as proposed.

5

11.      In addition, all documentation relating to the Restructuring, including the full text of the Restructuring Plans and the Plan Releases, has been and remains available for review on the Kroll Website.

12.      Accordingly, all Plan Creditors subject to the Plan Releases have had full notice of the releases, ample opportunity to review and understand their terms, the ability to vote on the Restructuring Plans (which include the Plan Releases), and the opportunity to raise any concerns they might have had regarding the Restructuring Plans and the Plan Releases before the English Court at the Sanction Hearing.  Despite these extensive opportunities, no Plan Creditor raised any objection to the Plan Releases.

13.      Further, the Restructuring is the result of a months-long, hard fought negotiation between the Debtors and the Plan Creditors, with creditors organizing into groups and retaining sophisticated advisors.  The Restructuring Plans and related implementation documents have been heavily negotiated amongst many experienced advisors and ultimately each creditor group accepted the terms of the Plan Releases.  Moreover, each Supporting Creditor has represented pursuant to the RSA that it has received adequate information concerning the business and affairs of the Group to make an informed decision with respect to the RSA and the Restructuring, and has independently made its own analysis and decision to support the Restructuring.

**C.      Nature of the Plan Creditors Subject to the Plan Releases**

14.      To my knowledge, all Plan Creditors who are subject to the Plan Releases should be sophisticated investors who should understand the terms of the Restructuring Plans, including the Plan Releases.  The Plan Debt consists of privately held debt instruments such as revolving credit facilities and term loans (*i.e.* the Term Loan A Facility, R-1 Revolving Facility, R-2 Revolving Facility, and Term Loan B Facility), and notes governed by indentures (*i.e.*, the Legacy Notes and the New 2029 Notes).  I understand that Plan Creditors under the loan facilities should

all be institutional investors.  Holders of the notes represented in the RSA that they are either (i) a "qualified institutional buyer" within the meaning of Rule 144A under the Securities Act of 1933 (the "**Securities Act**"), (ii) a "non-U.S. person" as defined in Regulation S under the Securities Act, or (iii) an institutional "accredited investor" within the meaning of the rules of the Securities Act.  The Legacy Notes and New 2029 Notes issued under Regulation S (the "**Regulation S Notes**") are the only Plan Debt that could potentially be held by non-institutional investors, and all of these investors would have to be located outside the United States.  That said, well over a majority of the Legacy Notes and the New 2029 Notes are held by institutional investors pursuant to (i) or (iii) above.  Plan Creditors holding Regulation S Notes represent only approximately 5.24% by value of the aggregate outstanding New 2029 Notes and Legacy Notes, and approximately 2.23% of the total debt subject to the Restructuring Plans.  Of the holders of Regulation S Notes present and voting at the Plan Meetings, approximately 99.42% by value voted in favor of the Restructuring Plans and approximately 0.58% by value voted against the Restructuring Plans.  Therefore the potential universe of retail holders is small compared to the size of the capital structure and in any event well over a majority of these holders approved the Restructuring Plans.

15.     Based on the foregoing, I believe that the Supporting Creditors subject to the Plan Releases are sophisticated investors who have had ample notice and opportunity to review and understand the terms of the Restructuring Plans, including the Plan Releases, and who have independently determined to support the Restructuring.

*[Remainder of Page Intentionally Left Blank]*

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information, and belief.

Dated: June 19, 2026
London, United Kingdom

/s/ Nicole Stephansen
Nicole Stephansen
Partner
Skadden, Arps, Slate, Meagher
& Flom UK LLP